HARDY et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1919.)

No. 3262.

1. WITNESSES ⬤269(15)—CROSS-EXAMINATION—REBUTTAL OF INFERENCE.

Testimony adduced on direct examination of defendants' witness being calculated to impress the jury that F., a coindictee, whose guilt was shown by the evidence, had been permitted to escape trial after giving a bond in an unnamed amount, and that this might have occurred because of his co-operation in procuring evidence, and that as to him the prosecution was not in good faith, the government, to rebut this, could on cross-examination show he secured his release by giving a $5,000 bond, and that he fled and a forfeiture was entered on his bond.

2. CRIMINAL LAW ⬤356—EVIDENCE—DEFENSE—ADVICE OF PROSECUTING ATTORNEY.

Defendant, prosecuted for conspiracy to transport liquor into the part of Oklahoma formerly the Indian Territory, held not entitled to show that before the conspiracy he was advised by the district attorney that a certain previous transaction was not criminal; identity between the transactions in material respects not being shown, so as to make the advice apply to the transaction in issue.

3. CONSPIRACY ⬤43(12)—VARIANCE—NUMBER OF PERSONS CONSPIRING.

One charged with conspiring with several may be convicted on proof of his conspiracy with some of them.

4. CONSPIRACY ⬤38—DEFENSES—ACTS AS EMPLOYÉ.

Defendant's participation in a criminal conspiracy is not excused by showing that what he did was in performance of duties of his employment.

5. CONSPIRACY ⬤43(12)—VARIANCE—PARTICIPANTS IN OVERT ACTS.

The doing by one of an overt act to effect the object of a previously formed conspiracy being sufficient, under Criminal Code, § 37 (Comp. St. § 10201), to complete the offense, variance between indictment and proof as to number participating in such act is immaterial.

6. CRIMINAL LAW ⬤717—TRIAL—ARGUMENT—READING LAW TO JURY.

Arguing to jury intent of wholesale liquor dealer to aid purchasers to ship to forbidden territory, from fact of his not entering in books sales for such territory, while making entries of other sales, and in this connection reading to them statutes requiring entries of all sales, held not objectionable.

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

D. M. Hardy and others, were convicted of conspiracy to make illegal shipments of liquor, and bring error. Affirmed.

J. H. Barwise, Jr., of Ft. Worth, Tex., Wm. H. Atwell, of Dallas, Tex., and W. F. Weeks, of Wichita Falls, Tex. (Thompson, Barwise, Wharton & Hiner, of Ft. Worth, Tex., and Weeks & Weeks and A. H. Britain, all of Wichita Falls, Tex., on the brief), for plaintiffs in error.

W. M. Odell, U. S. Atty., of Ft. Worth, Tex., and William B. Harrell, of Dallas, Tex., and Charles C. Robey, Asst. U. S. Attys., of Ft. Worth, Tex.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. This is a writ of error sued out by D. M. Hardy, J. R. Young, and J. O. Elliott to obtain a review of a judgment convicting them on each of the 15 counts of an indictment against them and Eugene Flowers, alias J. B. Flowers.

Each count of the indictment charged a conspiracy to commit an offense against the United States, that one or more of the alleged conspirators did a stated act or acts to effect the object of the conspiracy, and that the alleged conspiracy was entered into on or about the 1st day of July, 1917, and continued to the 15th day of April, 1918. The conspiracy charged in some of the counts was to commit the offense denounced by section 8 of the Act of March 1, 1895 (28 Stat. 693, c. 145 [Comp. St. § 4136b]), prohibiting the transportation of intoxicating liquors into that part of Oklahoma which at the time of the enactment of that statute was known as the Indian Territory. The conspiracy charged in the remaining counts was to commit the offense created by the provision of Act Cong. March 3, 1917, c. 162, 39 Stat. 1069 (Comp. St. 1918, §§ 8739a, 10387a–10387c), known as the Reed Amendment.

That there was evidence to sustain the charges contained in the indictment is not questioned. There was evidence tending to prove that the persons indicted, by concerted action, aided others who bought intoxicating liquors from the defendant Hardy at Wichita Falls, Tex., where Hardy conducted a wholesale and retail liquor business, in getting the liquor bought transported from that place into that part of Oklahoma which formerly was a part of the Indian Territory. In behalf of the plaintiffs in error it is contended that reversible errors were committed in rulings made on objections to evidence and in giving and refusing instructions to the jury.

[1] On the cross-examination of J. A. Lantz, a witness for the defendants, he was permitted, over objections made by the defendants, to testify that J. B. Flowers, who was named in the indictment as a co-conspirator with the three persons who were tried and convicted, had fled the country after giving a $5,000 appearance bond, upon which a forfeiture was entered. The admission of this evidence was accompanied by the court's instruction to the jury that it should not be considered as any proof of the guilt of the persons who were on trial. On the direct examination of the witness, who was United States commissioner and deputy clerk at Wichita Falls, the facts were elicited that H. M. Splawn was a posseman employed in the Indian service for the suppression of the liquor traffic; that said Flowers and one Langford worked with and helped Splawn in his work in that service; that Flowers and the defendant Elliott were arrested and taken to Ft. Worth on the same day or about the same time; and that Flowers was arrested on March 12 and made bond on March 13. The following was part of the direct examination of the witness:

"Q. Do you know where Mr. Langford and Mr. Splawn had their room during the time that they were working together in that work? A. They roomed at— I believe it is called—the Alta Rooms; I am not sure; it is a place over a garage; I think it was over a garage.

"Q. Do you know whether it cornered on an alley, was a room on the second floor in a building which cornered on the alley that ran back of Hardy's whole-sale liquor house, cornered by a corner of that alley and Seventh street, in Wichita Falls? A. No, no; I was not there but on one occasion, and the room that they had then was on the second floor of the street on Ohio street or avenue, and overlooked the street, and the room was near the center of the building; it was not a corner room.

"Q. If they moved from that place, and took a room over a pool hall, from which room they could look right down this alley back of Hardy's place, do you know it if such a thing occurred? A. No, sir.

"Q. You do not know that they changed their room? A. No, sir.

"Q. Do you know how long Flowers was confined in jail after he was arrested on March 12th? A. I think that I can tell. His bond was made on March 13th, and he was put in on March 12th.

"Q. Sir? A. His bond was made on the 13th.

"Q. Arrested on the 12th and the bond was made on the 13th? A. Yes, sir; now, I am not sure whether he was put back in jail again on the indictment or not. I am not sure about that, but I don't think so.

"Q. Do you know what the arrangement was between Flowers and Splawn and Langford, personally, yourself? A. No, sir.

"Q. Or what kind of a deal he had with them?    A. No, sir."

The evidence adduced on the direct examination of the witness was well calculated to make the impression on the jury that Flowers, who was named in the indictment as one of the conspirators, and whose guilt was shown by evidence introduced by the prosecution, had been permitted to escape trial after giving bond in an unnamed amount, that this might have occurred because of his co-operation with the agents of the government in procuring evidence of the commission of the crimes alleged, and that as to him the prosecution was not in good faith. The government was entitled to rebut that evidence, introduced by those on trial. It was permissible on cross-examination to bring out other features of the transaction, a part only of which had been disclosed by the testimony elicited by direct examination of the witness.

Proof of the facts that Flowers secured his release from custody by giving a $5,000 appearance bond, that thereafter and before the case was called for trial he had fled, and that a forfeiture was entered on his bond, had some tendency to prove that the prosecution was not at fault in failing to bring him to trial with his alleged co-conspirators. Whether the jury could or could not properly have been influenced by evidence introduced by the defendants on trial which indicated that one who was jointly indicted with them had been enabled to get away before the case was brought to trial, it was permissible for the prosecution to show that the transaction which had been testified to in behalf of the defendants on trial was not such a one as would support an inference that the prosecution consented to or connived at one of the alleged conspirator's escaping a trial and conviction. It was not error to admit the evidence in question for the purpose stated.

[2] On the objection of the prosecution the court refused to permit the introduction of testimony of Edgar Scurry, a witness for the defendants, to the following effect: That the witness as a lawyer represented the defendant Hardy when the latter, in the spring of 1916, was charged with some offense of importing liquor into the Indian

Territory; that he was present when the evidence on which that charge was based was stated to the then United States district attorney; that that evidence, as so stated, was to the effect that Hardy directed one or more of his employés to deliver to an automobile liquor bought from Hardy by two men in reference to whom Hardy stated to the district attorney, "I knew that these men lived in Oklahoma, and I had probably heard that they had had trouble in Oklahoma, for introducing liquor into Oklahoma;" that Hardy stated to the district attorney that he did not participate in the hauling of the liquor to Oklahoma, and was not going to do so, and had no financial interest in the transaction other than the sale of the liquor to the two men; and that the district attorney said in the presence of Hardy that the transaction, as reflected in the above-indicated statement of the facts to him, was not a violation of the law, and for that reason he had the charge dismissed.

It may be assumed, without being conceded, that it is permissible for one charged with having conspired with others to commit a stated criminal offense to prove that, before taking part in the transaction upon which that charge is based, he had been informed by the prosecuting officer that such a transaction is not a violation of law. The excluded evidence in question was not to that effect. The transaction which the proposed testimony showed was passed on by the district attorney was not shown to have had the features which give criminality to the transactions now in question. In material respects it differed from the transactions shown by the evidence introduced by the prosecution in this case. That transaction occurred before the enactment of the Reed Amendment, which made it a crime to cause intoxicating liquor to be transported in interstate commerce into a state or territory the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes.

The statement made to the district attorney did not show the commission, or an attempt or conspiracy to commit, the offense created by the above-cited statute of March 1, 1895, as it did not show that the liquor in question was intended to be carried into that part of Oklahoma which formerly was known as the Indian Territory. Whether the questioned action of the court is or is not sustainable on another ground, it is sustainable on the ground that the evidence offered had no tendency to prove that what the district attorney did amounted to advising Hardy that there was no criminality in such transactions as those relied on to support the charges made in this case.

[3] Complaint is made of the court's refusal to give a requested charge which was so expressed as to forbid a conviction unless the jury found from the evidence that all the defendants were parties to the alleged conspiracy. It was not error to refuse that instruction, as one charged with conspiring with others may be convicted on proof of his conspiring with any of such others, without proof of a conspiracy participated in by all of them. Jones v. United States, 179 Fed. 584, 600, 103 C. C. A. 142; 12 Corpus Juris, 627.

[4] Charges requested by two of the alleged conspirators, who were shown by the evidence to have been employés of another alleged

conspirator, asserted that such employés could not be convicted, if what they did in furtherance of the alleged conspiracy was done in performing the duties of their employment. Those charges were properly refused. One's participation in a criminal conspiracy is not excused by showing that the service he was employed to render required or called for such participation.

[5] The overt acts alleged in the several counts of the indictment were charged to have been committed by two or more of the alleged conspirators. Such overt acts by one only of such conspirators were testified to. The court ruled to the effect that the just stated difference between allegation and proof in the particular in question did not constitute a material variance. This was not error. The doing by one or more of the conspirators of "any act to effect the object of the conspiracy" is made an element of the statutory offense. Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. § 10201). The doing by one only of the parties to a previously formed conspiracy of an act to effect its object is as effective to complete the offense as the doing of that act by all of the conspirators. There being no difference in legal effect between the doing by one of the conspirators of the alleged act to effect the object of the conspiracy and the doing of that act by all of the conspirators, such a variance between allegation and proof as the one in question cannot properly be regarded as material.

[6] Over the objection of the defendants, the district attorney was permitted in his closing argument to read to the jury section 3318 of the Revised Statutes (Comp. St. § 6100), which contains provisions requiring a wholesale liquor dealer to provide and keep a book as prescribed by the Commissioner of Internal Revenue, and to enter in such book specified details of the sending of any spirits out of his stock or possession. The bill of exceptions, in connection with the statement of the reservation of the exception to that ruling, contains the following statement by the court:

"That upon the issue as to the knowledge and intent of the defendants, the government was permitted to offer in evidence the wholesale records of the defendant Hardy, which the evidence showed were kept by the defendant Young, on what is known as form 52, prescribed by the Commissioner of Internal Revenue, under the provisions of section 3318 of the Revised Statutes, which provides that such wholesale dealer shall, at the time of sending out of his possession or stock any spirits, and before the same are removed from his premises, enter in said book the day when the same and the place of business of the person or firm to whom such spirits are to be sent, etc.; it being shown from the evidence that large quantities of such liquors had been frequently delivered to persons to be transported to Oklahoma, directed from the wholesale establishment of D. M. Hardy, and that no entry had been made of such sales in said record, unless they were covered by entries of sales to 'D. M. Hardy, Retail.' Counsel for the government, in the opening argument, had argued these facts as evidence of the efforts of the defendants to conceal these transactions, and of their knowledge of the fact that the sales were being made for an unlawful purpose, as the record did show entries of sales to other parties at places where such sales were not prohibited by law. In reply to this evidence and this argument, counsel for defendants had stated to the jury that the records were correctly kept and that agents of the Internal Revenue Department had checked the records and had made a report to Washington of the manner in which they were kept, and that no one in Wash-

ington had ever said it was a violation of the law or an improper way of keeping the record; that in reply to this argument the district attorney used the language quoted in the bill of exceptions and stated the law referred to, which the court deemed to be a proper reply to the argument of counsel for defendants, and a proper argument as to the knowledge and intent of the defendants in failing to enter in the records referred to the names and places of business of the persons to whom such liquors were sent."

The part in question of the district attorney's argument, made under the circumstances stated, was not subject to the objection interposed to it. On the question of Hardy's intent in doing what had the effect of aiding persons who made wholesale purchases of liquor from him in getting that liquor transported from Texas into Oklahoma, it was permissible to consider an attending circumstance which had a tendency to prove that he concealed or attempted to conceal those transactions. In this connection it was pertinent to call attention to the existence of a legal requirement that such transactions be disclosed in a prescribed way, and to the circumstance that the requirement was complied with as to other similar transactions which did not involve a criminal intent, but was not complied with as to the transactions in question.

The record does not disclose any reversible error. The judgment is affirmed.