## UNITED STATES v. BERGER. *
### No. 137.

Circuit Court of Appeals, Second Circuit.
Nov. 5, 1934.

Sydney Rosenthal, of Long Island City, N. Y., for appellant.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

Berger was indicted with Jones, Katz, Rice and others for conspiring to utter counterfeit bills. A jury might have found the following facts from the evidence: Rice was an engraver, and had made the counterfeit plate from which the bills were printed; apparently he also printed them. He and Katz arranged that they should use them to buy rings which the owners advertised for sale, disposing of the rings for what they could get. In pursuance of this plan Rice gave Katz some of the money which Katz passed off upon various ring owners. Berger, a real estate agent, had heard from some woman that Katz had counterfeit money to dispose of, and went to him to learn the truth of the report. Katz told him that he had and showed him a bill; but Berger did not offer to take any, being fearful of detection; instead, he introduced Jones to Katz. At a meeting between the three at the woman's apartment, Katz gave Berger four bills which Berger at once turned over to Jones. These and others Jones passed to tradesmen. All this depended chiefly upon the testimony of Katz who turned state's evidence against the rest; who had been several times convicted of other crimes; and who was a thoroughly unreliable person. However, he was corroborated as to Berger by some admissions made after Berger's arrest, and to some extent by witnesses who had seen Berger in Jones' company before Jones passed the bills. The passing was amply proved against Jones and Rice, but each denied any connection with Katz or Berger. Thus the case against Berger was not strong, though there was enough if the jury believed the testimony. We have frequently said that we would not ordinarily intervene in an issue depending on the credibility of witnesses and there is no reason to make an exception here. We should not have felt called upon to write any opinion were it not for the following point of law: As we have said, the original arrangement was between Katz and Rice, and contemplated a limited use of the bills; that is, to buy rings. When Katz engaged Jones through the intervention of Berger, it was to pass the bills to trades-

men, and Rice knew nothing of it. Nor did Berger or Jones know that Katz was associated with Rice; though Jones was acquainted with Rice. So far as they knew, Katz might have got the bills from any one. Thus the evidence really showed two separate conspiracies; one of Katz and Rice, the other of Katz, Berger and Jones, with no connection except that Katz was a common member to both schemes, and that both concerned the utterance of the same bills. The question is whether it was error not to dismiss the case for a material variance, as Berger's attorney moved at the close of the evidence.

 If an indictment lays a conspiracy against three and the evidence shows that only two are concerned, it is a variance; the conspiracy proved, whether viewed as an agreement, or more vaguely as an association, is different from that charged. But it is not regarded as a material variance, and the conviction will stand. Breese v. U. S., 203 F. 824 (C. C. A. 4); Hardy v. U. S., 256 F. 284 (C. C. A. 5); Bryant v. U. S., 257 F. 378 (C. C. A. 5); Harrison v. U. S., 7 F.(2d) 259 (C. C. A. 2); McDonald v. U. S., 9 F.(2d) 506 (C. C. A. 8); Linde v. U. S., 13 F.(2d) 59 (C. C. A. 8); Meyers v. U. S., 36 F.(2d) 859 (C. C. A. 3). To charge three with a single conspiracy and prove two conspiracies to which only one is a common member, is logically no worse, and may not in practice involve any greater hardship, though in effect two separate crimes are tried at one time. But it must be owned that the view in four circuits appears to be that in such a situation all the accused must be acquitted. Terry v. U. S., 7 F.(2d) 28 (C. C. A. 9); Wyatt v. U. S., 23 F.(2d) 791 (C. C. A. 3); U. S. v. Wills, 36 F.(2d) 855 (C. C. A. 3); Tinsley v. U. S.; 43 F.(2d) 890 (C. C. A. 8); Marcante v. U. S., 49 F.(2d) 156 (C. C. A. 10). Dowdy v. U. S., 46 F.(2d) 417 (C. C. A. 4), reversed as to other defendants in Funk v. U. S., 290 U. S. 371, 54 S. Ct. 212, 78 L. Ed. 369, 93 A. L. R. 1136, does not involve the doctrine; when the conspiracy as laid was broken up into two conspiracies, it appeared that one of these was outside the jurisdiction of the trial court, which necessarily infected any conviction upon that record. In our own decision in U. S. v. Siebricht, 59 F.(2d) 976, the indictment had laid a general conspiracy, perhaps to avoid the statute of limitations; but the evidence proved two entirely disconnected conspiracies, one of which was outlawed. Obviously the conviction could not stand.

 The last two decisions are indeed good instances of how on occasion the variance may prove material, but the others do not convince us that it always must be, or that in general it is, a defect outside the amendment of 1919 to section 269 of the Judicial Code (section 391, tit. 28, U. S. Code [28 USCA § 391]). The materiality of a variance does not depend upon the degree of its logical perversity, but upon how far it throws confusion into the trial and makes it likely to miscarry. Does it surprise the accused by calling upon him to meet a charge for which he is not prepared? Will it allow the production of evidence not competent or material to the crime he has committed, though admissible against another defendant tried at the same time? It is such considerations as these which should determine the question, rather than the extent to which the syllogism implicit in all good pleading has been violated. This is especially true when the crime is conspiracy, where much is of necessity tolerated that would not be allowed elsewhere; for example, the declarations of a conspirator after the conspiracy has ended, provided the jury be cautioned to use them only against the declarant, an admonition impossible to obey. It is indeed no answer to a bad practice to say that worse is tolerated already, but it is something to remember that in trials for this crime the latitude is wide. At any rate we are not content to dispose of the cause by the absolute doctrine that appears to have been accepted elsewhere; we believe that the error must be such as to "affect the substantial rights of the parties." Section 391, tit. 28, USC (28 USCA § 391). In the case at bar we cannot see how it could have damaged Berger to have Rice's case tried with his. No doubt, strictly speaking, the evidence of Katz's trafficking with Rice was incompetent; but it was certainly harmless to Berger. Katz had to get the bills from some one unless he printed them himself; the fact that he got them from Rice gave no weight to his word; indeed, rather the contrary, because Rice was an added witness to his untruthfulness. His association with Rice, even if Rice was a proven counterfeiter, did not taint Berger. We can see nothing else of which Berger can complain; certainly it was no surprise to him if the conspiracy broke into two parts. And so we hold that the variance was not material, and that all could be convicted though all were not acting in concert.

 Berger also complains of the conduct of the prosecuting attorney. It is indeed true that this officer failed in moderation and good taste; we might have been better content had the trial judge seen fit to keep him more close-

ly in hand than he did. But the abuse of his position as prosecutor—for it seems to us to have been such—was not so extreme as to require us to upset the judgment. More can be said as to those questions which he put to Berger implying that Berger had made declarations to him, contradictory to what he swore to on his direct. That common device is an abuse which ought to be straitly controlled, at times even at the cost of a mistrial if need be. But again, it would be extravagant now to reverse the conviction on its account, for it is fantastic to suppose that it substantially determined the outcome. If it colored the whole, as perhaps it did, and as it was certainly intended to do, the shade that it added we can scarcely detect; to-day, when mere possibilities do not interest us as they did our forerunners, we demand more tangible evidence that damage has been done. Salerno v. U. S., 61 F.(2d) 419, 424 (C. C. A. 8). The general conduct of the trial is primarily the duty of the trial judge, on whom the responsibility for the result must rest. In the case at bar we can find nothing grave enough to compromise its essential fairness.

Judgment affirmed.