### KOPALD–QUINN & CO. et al. v. UNITED STATES.*

No. 8590.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1939.

HOLMES, Circuit Judge, dissenting in part.

*Rehearing denied March 10, 1939.

John M. Slaton, Hal Lindsay, and A. Walton Nall, all of Atlanta, Ga., for appellants.

J. Albert Woll, Sp. Asst. to Atty. Gen., Brien McMahon, Asst. Atty. Gen., and William J. Connor, Sp. Atty., Department of Justice, of Washington, D. C., and M. Neil Andrews, Atty., Securities and Exchange Commission, and Lawrence S. Camp, U. S. Atty., both of Atlanta, Ga.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants were indicted and tried with others upon an indictment in fifteen counts. Counts 1 to 7 charged them with "employing, by the use of the mails, a device, scheme or artifice to defraud" in violation of Sec. 17(a) of the Securities Exchange Act of 1933, as amended;[1] counts 8 to 14 inclusive charged them with using the mails to defraud in violation of the Mail Fraud statute,[2] and the 15th count charged them with a conspiracy to violate both acts.[3]

The theory of the indictment was that defendants named in it were all parties to a general scheme to defraud, in the sale of securities, originating some time prior to August 1, 1933 and continuing thereafter. The scheme part of the indictment is described in detail in Count 1, and is incorporated by reference in the other thirteen substantive, and in the 15th, the conspiracy count.

In pleading the scheme, device and artifice, and the things done to accomplish it, the indictment went into great and unnecessary detail, descending to particulars, many of which were not essential to the scheme. Stripped of its non-essentials, the scheme alleged was this: defendants would organize or acquire, operate or control investment firms and corporations, among them Kopald-Quinn & Co. and Gould & Co. and would maintain offices in various cities and places for the sale, at retail, and on the partial payment plan, 50% down, the balance to be paid and the stock to be delivered, within sixty or ninety days, of securities, usually common stocks, to be furnished from time to time for distribution to their customers, the persons to be defrauded.

It was a part of the scheme to induce persons to be defrauded to open accounts by having the company to represent that it was an investment house of good standing, serving and equipped to serve the welfare of its clients and customers, and that it was prepared to advise them how to make, and to make, profits for them through the purchase of recommended stocks; whereas in truth and in fact, these companies were not investment houses in good standing, equipped and operating to make money for their customers, but they would be plants concerned only in unloading on customers more or less worthless stocks, which they knew their customers as a whole would not and could not make money out of, but would certainly lose by it.

Having thus established and perfected their organization for distribution, they went about to and did make arrangements by which they would not only get more or less worthless stocks to distribute as they had planned, but would, through the mechanism of marketing operations, and a scheme for controlling the supply of the stock, create an illusion of market values to base their retail sales upon. In its operation the scheme, as alleged, would work this way.

Based upon the appearance of a market, they would sell their customers thousands of shares for which there was no real market at any price, much less at the price for which sold, and they would continue to do this as long as the market operations enabled the sales to go on. Then when the market would no longer support new sales in that stock, they would take up a new one, and the same process would be gone through with it. The scheme alleged, in short, was that those managing retail investment houses, like Kopald-Quinn Company, and Gould & Company, appearing in the guise of shepherds of the flock would gather as many investors as they could into the fold; then with the fold full, and as much fleecing as possible done in that stock, they would be shepherded into a new stock fold, and again fleeced, and

---

[1] 15 U.S.C.A. §§ 77a et seq., 77q.
[2] Sec. 215, Criminal Code, 18 U.S.C.A. § 338.
[3] Sec. 37, Criminal Code, 18 U.S.C.A. § 88.

the process would be repeated as long and as often as the money and confidence of the customers held out.

Extending over four months, and making up a record of some two thousand pages, the trial at last came to its end. Defendants' motions for a directed verdict were overruled, and there was a verdict finding Sutterman, Mendelson, Sherman, Ricebaum and Gould & Co. guilty on Count 1 and Count 15, of the indictment, and Kopald-Quinn & Co. guilty on all of its counts, except 5, 6, 7 and 10. Sutterman, Mendelson and Sherman were sentenced, on Count 1, to five, and on Count 15, to two years to run concurrently; Ricebaum on Count 1, to three years, and on Count 15, to two years, to run concurrently, while the sentence of Gould & Co. and Kopald-Quinn & Co. was a fine of $5000 on each of the counts on which each stood convicted. Kopald-Quinn & Company filed a two page brief, adopting the brief filed by Mendelson et al.

Here, while in a general sense making common cause upon points they have in common, Mendelson, Sutterman, and Sherman, on their part, and Ricebaum and Gould & Company on theirs, appear by separate briefs and counsel, each vigorously asserting that no case was made out as to them, and if there was, that the trial as to them was attended with prejudicial error requiring reversal.

The point they argue most is the general one, that they should have had an instructed verdict on both counts, because there was no evidence connecting them with any of the wrongs charged in either count; but they make specific points, too, against each of the counts.

As to the conspiracy count, they urge upon us that it charged a single general conspiracy or scheme, while if the proof showed them or either of them to have been engaged in any conspiracy, it was not the general one charged in the indictment, but a separate and distinct one with which they are not charged.

As to Count 1, they urge that, charging a violation of the Securities Exchange Act, it charged the use of the mails to effect sales of securities to one Spivey, the person named in the count, and the proof wholly failed to show this. They insist that all the proof showed that there was no use of the mails to effect sales to him, that such use of the mails as was proven in connection with the transactions with him, with which that count deals, were consequent upon and after the making of a sale to him, and merely incidental.

They urge, too, as to this count, that if the proof did make out a case under it against Kopald-Quinn, it did not make out one against them, for there was no evidence whatever that any of them had anything to do with the sale that count deals with. They insist that it was entirely a Kopald-Quinn transaction, the count letter having been admitted as to Kopald-Quinn, and excluded as to other defendants, except as affected by the admission against the corporation, and that there is no evidence whatever connecting these appellants with Kopald-Quinn Co.

The ruling of the court admitting testimony as to representations made by Kopald-Quinn's agents in the sale of stocks by that company through them, and its ruling admitting the testimony of Barr, Munch and others as to acts and declarations prior to August, 1933 before the offense charged in the first count was committed, and before the time charged for the beginning of the conspiracy, are also assigned as error.

Error is assigned, too, to parts of the general charge, to the failure of the court to give certain charges requested by appellants; and to the failure of the court on motion, to suppress evidence, and require the return, of records, files, books of account, correspondence, etc., of E. M. Burke & Company, John J. Burke & Company, Kopald-Quinn Company, and Gould & Company, and to the admission of the testimony of the Government witness, Carl A. Oleson, as to their contents.

The assignments as to the rulings on evidence, and as to the giving or refusal of instructions, will not be separately considered. They may and will be disposed of with the statement that the general charge, a model in its way, not only fairly, fully and correctly submitted the case as a whole to the jury, and in a meticulously painstaking way sent to it every theory on which defendants were entitled to a charge, but made it entirely clear, as had been done in repeated rulings throughout the case, that none of the evidence received was binding on any of the defendants, except the one directly concerned in it, unless it was shown to have been a part of the conspiracy, and then only as to such defendants as were shown to have

been connected with and parties to the conspiracy.

We turn then to their substantial contentions for reversal.

As to the conspiracy count, it is primarily insisted that no conspiracy of any kind was shown, but that on the contrary, the evidence failed to show violations of either the Securities Act or the Mail Fraud Act, and indeed, as far as these defendants are concerned, showed only legitimate transactions conducted in a legitimate way. They insist that particularly was it not shown as charged in the indictment, (a) that the defendants had raised prices to sell stocks, in order only to depress them after they had been sold; (b) that defendants' scheme or plan was to prevent the customers from paying out their purchases, and that to induce this result they paid their agents better commissions for closing customers out than for completing sales; (c) that defendants made wash, or fictitious sales; and (d) that the defendants did not intend to deliver the stock when paid for.

Further, the contention is made, as to the conspiracy count, that if any conspiracy was proven against any of the defendants it was a very different one from that charged in the indictment. For whereas the indictment charged a general conspiracy, the defendants, if conspirators at all, were engaged not in a general conspiracy, but in a series of separate conspiracies, with separate defendants, and not at all the general one charged.

As to Count 1, all of the defendants insist that there should be no conviction on that count, because, though it charged the employment of a scheme to sell by the use of the mails, the proof shows that there was no such scheme; that such scheme, if any there was, was to sell by verbal contact and negotiations, and not through the use of the mails.

As to Count 1, Gould & Company, and the individual appellants make the additional point that there could be no conviction on this count against them, because not only was it confined to and concerned entirely with the activities of Kopald-Quinn & Company, but the count letter, the basis of the conviction, was admitted as to Kopald-Quinn Company, excluded as to the other defendants.[4]

Kopald-Quinn & Company do not of course claim that the count letters, on which it was convicted, are not in evidence against it, and to this extent its position is different from that of Mendelson, Sutterman and Sherman, but the other points made by those appellants are adopted and urged by it.

In attacking their conviction on the conspiracy count appellants insist that the Government wholly failed to make out the case it plead, and that a search of the long record will reveal no evidence justifying their conviction. The Government, replying, argues that it was not necessary for it to prove all of the details of the scheme alleged by it; it was sufficient if it proved the scheme in general, and that the record not only contains evidence supporting the jury's finding that a conspiracy existed, but that indeed, no other verdict could reasonably have been returned.

To appellants' insistence that in its essence the scheme alleged was one to artificially raise and artificially lower, on national exchanges, the prices of stocks selected for retailing, in order first to enable the retail houses to sell the stocks on the partial payment plan, while the raising process was going on, and then to buy them back at heavy loss to their customers during the lowering process, and that the proof wholly failed to show any effort or scheme to depress prices so as to buy the stock back from their customers, and thus proof of the scheme failed, the Government replies, "Not so." The scheme in its essence was to pretend, as confidential advisers of their customers, to be selling them stocks having permanent value, and safe to buy at the price which they were paying, when the defendants

---

4 The record, page 1504, shows that to the admission in evidence of the Count 1 letter, the defendants objected that in the sale of the securities mentioned in the exhibit the alleged scheme was not employed by the use of the mails. The defendants Gould & Company and Joseph Ricebaum objected upon the additional ground that there was no evidence to connect either of them with the transactions, or with Kopald-Quinn Company, and as to them, they were hearsay. The court ruled "I will admit the letter as to the corporation Kopald-Quinn, and exclude it as to the other defendants, except as affected by such admission against such corporation;" while at the end of the charge there was an exception to the submission of Count 1 to the jury, "as to any defendants other than Kopald-Quinn, the evidence having been admitted only as to that corporation."

knew the stocks were not worth the prices they were selling them at, and that the prices would not stand up against any real selling. Their whole purpose was to get their customers' money, by unloading stocks on them, and not at all as they pretended, to serve their customers by helping them make money. It insists that this general scheme to defraud by this installment selling plan was overwhelmingly made out; that all of the appellants knew that the prices, on the basis of which they were selling, did not represent real values, and that the customers had no real chance of getting any substantial part of their money back. That thus, the scheme boiled down, was one of pretending to be working for the customers' interest while working for their own; of pretending to give the customers stocks which in their honest opinion they thought had real value, when they knew that they were feeding them stocks under a preconceived plan at a value greatly less than the prices they were paying for them, and at times of substantially no value; and that inevitably, when the period of distribution was over, if not long before, the thinly maintained market price would collapse, and the customers lose all or the most, of what they had paid in.

While we agree with appellants that there is no evidence that they were in a scheme to raise and then depress the market, so as to buy back the stock, and none that they were making wash sales, or arranging their commission accounts so as to furnish inducements for closing out their customers, we agree with appellee that the proof is wellnigh overwhelming that all of them were guilty of the fraudulent practice of unloading stocks on their customers, upon assurances that in the opinion of the sellers they were good stocks and of full value, when they knew they were not, and that the customers were almost certain to have a loss in them.

Appellants' first position, therefore, that the evidence fails to show that they were engaged in a conspiracy to defraud by unloading more or less worthless stocks, while pretending to be acting in the interest of their customers, must therefore be rejected, and the conviction as to them all on Count 15 affirmed, unless the evidence supports them in their second point against the conspiracy count, that they were none of them engaged as the indictment charges in one general conspiracy, but in several separate and distinct conspiracies, and they could not therefore be convicted as charged.

Appellants have vigorously attacked the indictment and the prosecution as unfairly obtained and conducted, and, as supported alone by the testimony of wholly discredited and disqualified witnesses, some morally delinquent, some mentally incompetent, and therefore disentitled to belief, and as but a dragnet designed to involve and convict the innocent along with the guilty. Appellee on its part insists that the record not only contains a mass of testimony offered by it, overwhelmingly establishing the guilt of each of the appellants, but not a single bit of evidence to the contrary.

Because of these diametrically opposed contentions as to what the record shows, and its effect, we have read all of it with the utmost care, and while we do find it made up in part of testimony of witnesses whose credibility is strongly under attack, we think it quite clear, that as to defendants Mendelson, Sutterman, Sherman and Kopald-Quinn Company, it abundantly supports the verdict of the jury, that they were engaged in the general conspiracy charged to defraud their customers in the sale of securities, and; that the verdict as to them all of guilty as charged in Count 1, of a fraudulent sale, and as to Kopald-Quinn Company of guilty on the other counts, is also fully sustained.

According to the evidence, Kopald-Quinn Company was a mere agency or instrumentality, organized, set on foot, and operated by these three defendants, to carry out the scheme they had formed of unloading worthless stocks. What Kopald-Quinn did, they did. There was neither variance between indictment and proof, nor failure of proof as to these defendants, nor, as to them, was any reversible error committed in the conduct of the trial. In so holding, we have not overlooked the contention vigorously urged by them that no offense is stated in or proven under Count 1, because to constitute an offense under the Securities Act on which that count was based, it was necessary to prove a scheme to effect sales, and the actual making of sales, of securities by mail, and this was neither pleaded nor proven here.

We think the construction thus urged for the Act unduly narrows the language used in it, unduly limits its scope and effect. We think the count alleges an

offense under the Act, and that the proof supports the allegation.

Nor have we overlooked the point these three individual defendants make, that the Spivey letter, on which Count 1 was based, was not admitted into evidence against them, but only as against the corporation Kopald-Quinn Company.

An examination of the record as to this point discloses that it was Ricebaum and Gould & Co., and not these defendants, who objected to the introduction of the letter on this ground. But it shows further that not only in the very language of the limitation imposed by the court on its admission, but throughout the record, this letter, as well as all other evidence, was admitted specifically against a particular defendant, with the understanding that it was to be taken as against all other defendants shown to have been in conspiracy with that one.

■ The evidence overwhelmingly established that Kopald-Quinn Company was but a creature of these individual defendants. Its acts were their acts. The admission of the letter against Kopald-Quinn admitted it equally against these defendants.

■ As to Ricebaum and Gould & Company, the matter stands quite differently. While the record leaves in little doubt that these two were engaged in a conspiracy with Mendelson, Sutterman and Sherman to sell worthless stocks to their customers, just as Kopald-Quinn were in a conspiracy with those three to sell worthless stocks to theirs, we find no support whatever for the view that Ricebaum and Gould & Co. were engaged in a conspiracy with Kopald-Quinn to sell stocks, or that either aided, abetted or assisted the other in any manner in making sales.

Upon the record Ricebaum's activities were confined to those of Munch & Co. and Gould & Co., and the activities of these companies were carried on without any connection whatever with those of Kopald-Quinn. Thus, while the indictment charges one general conspiracy, in which all of these defendants were engaged, and the proof supports the indictment as to Mendelson, Sutterman and Sherman, and Kopald-Quinn, it shows also a separate conspiracy of the same general nature between Mendelson, Sutterman and Sherman on the one hand, and Gould & Co. and Ricebaum on the other, with which

Kopald-Quinn Company was not in any manner connected.

It is we think, plain, therefore, that there has been a complete failure of proof as to Ricebaum and Gould & Company under Count 1, both because they being in no wise connected with Kopald-Quinn Company in any kind of a conspiracy, or joint action, under the ruling of the court the count letter was not admitted into evidence as to them, and because putting this construction of the ruling aside, and assuming that the letter was admitted against these appellants, it should not have been, because they were in no manner connected with Kopald-Quinn as conspirators, aiders, and abettors, and there is no evidence in this record connecting them, with or convicting them of, the offense charged.

■ As to the conspiracy count, though, notwithstanding the fact that one conspiracy is charged and two proven, we think that under United States v. Berger, 2 Cir., 73 F.2d 278, 280, affirmed in Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314, the conviction should be affirmed. For though the conspiracy of which they were, upon the record, guilty, was a separate and distinct one from that of which Kopald-Quinn Company was guilty, the verdict against them was so fully supported on the record, and the conspiracy of which they were guilty was so closely connected with the other conspiracy, the three moving spirits in the other being the moving spirits in this one, that the conviction should not be disturbed.

The judgment is therefore affirmed as to Mendelson, Sutterman and Sherman as to Counts 1 and 15. As to Kopald-Quinn Company, it is affirmed on all the counts as to which they were convicted. It is affirmed as to Gould & Company and Ricebaum as to Count 15, and reversed and remanded as to these two, on Count 1, for further proceedings not inconsistent herewith.

Affirmed in part and reversed in part.

HOLMES, Circuit Judge (dissenting in part).

The jury found that Gould & Company and Ricebaum were parties to a single, continuing conspiracy, as charged in the indictment. The evidence is sufficient to sustain this finding; and, since unity of purpose was established by the

634

evidence and the verdict of the jury, the various means employed in attaining this purpose did not convert a single conspiracy into a series of separate conspiracies. The commission of the offense charged in the first count of the indictment was an act in furtherance of this conspiracy, and is considered in law the act of all of the conspirators.

As members of the conspiracy, Gould & Company and Ricebaum were guilty of the offense committed in furtherance thereof. Ricebaum is the man who said, "You don't need to worry about these stocks; the people are going to be wiped out, and you don't have to get excited." Also, he said, "Don't worry about that stock; the boys are going to pull the string, and the stock will go down like the rest of the market."

I think the judgment should be affirmed as to all of the defendants. Therefore, I concur in the result in so far as the judgment of the district court is affirmed, but I dissent from the judgment of reversal as to Gould & Company and Ricebaum.