**BAKER et al. v. UNITED STATES.**
No. 10984.

Circuit Court of Appeals, Fifth Circuit.
July 10, 1946.

Rehearing Denied Aug. 12, 1946.

Writ of Certiorari Denied Oct. 28, 1946.
See 67 S.Ct. 123.

Hugh M. Wilkinson, John D. Lambert, Jacob J. Amato, G. W. Gill, Warren O. Coleman, Samuel J. Tennant, Jr., Thomas E. Furlow, and Clem H. Sehrt, all of New Orleans La., for appellants.

Rubein Johnson and A. M. Safir, in proper.

Herbert W. Christenberry, U. S. Atty., and Robert W. Weinstein and Nicole E. Simoneaux, Asst. U. S. Attys., all of New Orleans, La., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another in that long line of cases in which, claiming prejudicial variance, defendants seek reversal on the ground that the indictment charged one general conspiracy, while the proof at best for the government showed several separate conspiracies.[1]

Charging a scheme to defraud and the use of the mails in connection with the sale, as oil bearing and otherwise valuable, of marsh and swamp lands, counts one, two and three charged violations of the Securities Act of 1933, Title 15 U.S.C.A. § 77q, counts four, five, six, and seven charged violations of the mail fraud statute, Section 338, Title 18 U.S.C.A. When the government rested, defendants, without offering any evidence, rested too. Counts six and seven were dismissed, a verdict was directed on count three, defendants' motions for directed verdict on the other counts were denied, each of the defendants was convicted and sentenced[2]

---

[1] Tinsley v. United States, 8 Cir., 43 F.2d 890; Marcante v. United States, 10 Cir., 49 F.2d 156; United States v. Beck, 7 Cir., 118 F.2d 178; United States v. Berger, 2 Cir., 73 F.2d 278; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Kopald-Quinn & Co. v. United States, 5 Cir., 101 F.2d 628; Telman v. United States, 10 Cir., 67 F.2d 716; Mansfield v. United States, 5 Cir., 155 F.2d 952; United States v. Cohen, 2 Cir., 145 F.2d 82; United States v. Rosenberg, 2 Cir., 150 F.2d 788; United States v. Lekacos, 2 Cir., 151 F.2d 170, reversed in Kotteakos & Lekacos v. United States, 66 S.Ct. 1239.

[2] Diaz to serve six years, five years on count four and one year on count five, with a sentence on counts one and two of five years to run concurrently with the sentence on count four.

Bergin to serve eight years, five years on count four and three years on count five, with a sentence on counts one and two of five years to run concurrently with the sentence on count four; serv-

on counts four and five, and each has separately appealed.

Some of the defendants, indeed most of them, assail their convictions and sentences on counts one and two, the "security" counts as without legal force. They insist that the proof showed not a sale of a security, i. e., "a sale of an interest in land where the investor looks for the success of his investment to the activities of the promoter", as in the cases relied on by the United States,[3] but a sale of land where the investor looks to the land itself and to the activities of others not at all connected with the promoter.

Interesting as the question posed by these claims of error is and difficult as its answer may be, it is not necessary for us to concern ourselves with it. The sentences on these counts are made to run concurrently with those imposed on the mail fraud counts, and if those sentences are valid, the judgment must be affirmed,

Each defendant has separately appealed, and each has presented his separate assignments of error, but the chief reliance of each is upon the same general grounds of error. It will suffice, therefore, to treat these errors generally, referring to an individual appellant where in respect of a particular assignment he stands differently from other defendants, or where he presents an assignment not relied on by others.

Errors are assigned to the admission of evidence, to the giving and refusing of charges, and to the general conduct of the trial by the court. Some of the appellants complain that the attitude of the trial judge was prejudiced and unfair and in itself prevented a fair trial.

■ We are committed to the view that it is of the essence of a fair trial that the judge conduct it with complete disinterestedness, and that if he fails to do so, the judgment will be reversed.[4] Because we are, and because of appellants' complaint, we have examined this record with the utmost care only to find the picture it presents is one of complete disinterestedness and fairness. Throughout, it exhibits good manners and an attitude of patience, courtesy and helpfulness on the part of the judge. Throughout, it exhibits a willingness, indeed an earnest desire to understand the claims and positions of the defendants. Throughout it presents a most painstaking effort to conduct the trial as a judge should conduct it not as a participant lending weight to either side, nor as a mere moderator, but as an impartial

ice of sentences to begin at the expiration of the term now being served by Bergin in the Iowa State Penitentiary.

Johnson to serve seven years, five years on count four and two years on count five, with a sentence on counts one and two of five years to run concurrently with the sentence on count four; service of sentences to begin at the end of the term now being served by Johnson in the Atlanta Penitentiary.

Safir to serve five years and one day, four years on count four and one year and one day on count five, with a sentence on counts one and two of five years to run concurrently with the sentences on counts four and five.

Baker to serve six years, five years on count four and one year on count five, with a sentence on counts one and two of five years to run concurrently with the sentence on count four.

Bird to serve five years and one day, four years on count four and one year and one day on count five, with a sentence on counts one and two of five years to run concurrently with the sentences on counts four and five.

Kahn to serve five years and one day, four years on count four and one year and one day on count five, with a sentence on counts one and two of five years to run concurrently with the sentences on counts four and five.

Levy to serve five years and one day, four years on count four and one year and one day on count five, with a sentence on counts one and two of five years to run concurrently with the sentences on counts four and five.

Silverman to serve six years, five years on count four and one year on count five, with a sentence on counts one and two of five years to run concurrently with the sentence on count four.

[3] S.E.C. v. Joiner, 320 U.S. 344, 64 S. Ct. 120, 88 L.Ed. 88; Mansfield v. United States, 5 Cir., 155 F.2d 952; S.E.C. v. Howey Co., .66 S.Ct. 1100; Atherton v. United States, 9 Cir., 128 F.2d 463.

[4] Hunter v. United States, 5 Cir., 62 F.2d 217; Gomila v. United States, 5 Cir., 146 F.2d 372.

and disinterested governor of its course to keep the trial within legal bounds.[5] Indeed, it is a matter of comment that so few claims of error have arisen in so long a trial.

Firmly committed, as we are, to the proposition that while it is the duty of a trial judge to conduct the trial with firmness, understanding and judgment, it is equally his duty to conduct it with patience, politeness, fairness and moderation, and that he is not to dominate the trial or to do more than, as administrator of it, keep it within legal bounds, we find in this record nothing to condemn, but only to commend. Good manners, patience, kindness, sympathy and understanding are required of a trial judge, but complete and perfect inerrancy is not and cannot be. "Abstract inerrancy is hardly possible in the trial of a case in a federal court; it is never an essential to a valid trial there. * * * Too much is said and done about too little in the heat and hurry of a trial, for it all to be important. Things of no moment in their transpiring are not made momentous merely by making record of them." Maryland Cas. Co. v. Reid, supra, 76 F.2d at page 33. When then a record shows that a long trial like this has been conducted throughout with complete single mindedness to hear fully and fairly and to rule with patience and judgment, appellants, if they would bring the trial to naught, must show something more than that a mere aberration from trial rules has occurred. They must show error which is, or reasonably may be considered to be, prejudicial, 76 F.2d at page 33.

More, while there are cases in which courts will notice plain error which goes to the substance of a case or adversely affects the just conduct of the trial, normally in order to put a judge in error, counsel must appropriately call desired action to the attention of the court and give the court an opportunity to avoid or correct error. They may not wait until appeal to point it out, 76 F.2d at page 33. Certainly they may not invite action by the court and then complain of such action as error.

It is in the light of these views that we turn to a discussion of the errors assigned on the conduct of the trial, taking up first, objections to evidence. Only one such objection was made. Only one of the appellants, Silverman, claims error in respect of it here. This objection was to the introduction in evidence of the books of the Plaquemines Land Company and the testimony about them. We find no reversible error here. The books were adequately proven up as the books of the company. Indeed it was not claimed that they were not. The district judge instructed the jury throughout the trial that a particular defendant would not be bound by what others said and did unless a party to the conspiracy to sell the land of Plaquemines Company. If Silverman was a party to that conspiracy, the acts of his co-conspirators in keeping the books and running the business of the company would bind him. If he was not, he would not be bound.

Certainly the books were admissible against Baker, the president of the company, and against those whom the evidence showed were officers or agents of the company engaged in the general scheme to sell the lands. They would be equally admissible against Silverman if he was a party to the conspiracy, and on this issue the jury were well instructed. Indeed there is no complaint on the score of the charge.

But if it be considered that there was error in the admission of the books, the error was not prejudicial. The books were brought into court and were available to both sides, and nothing that was testified to, from or about them could be said to have been prejudicial to Silverman or indeed any of the defendants. If there was error in their admission, it was harmless error.

The claimed errors in the charge fall into two categories: In the first are those which go to the refusal of the court to direct a verdict: (a) because of failure of the proof to show mailing as to some of the counts; (b) because of failure of the proof arising out of a variance between the charge in the indictment of one gen-

[5] Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30.

eral conspiracy and the proof of many separate ones. In the second category three complaints which go to the form of the submission, are made. One is of the charge on the presumption of innocence. One is of the charge on reasonable doubt. One is of refusal to charge on defendant's failure to testify.

■ Of the presumption of innocence charge, it is sufficient to say that the attention of the district court was called to the error in the charge, and, before the jury retired, a charge was given correcting it. No one complained of, or took exception to, the correcting charge. The matter stands here with the defendants claiming error in a charge which, on their motion, was corrected by the trial court before the jury retired. The charge on reasonable doubt was not complained of below, or called to the trial court's attention by an exception to the charge, and no opportunity was offered the trial judge to correct it. If it was error to so charge, and this is extremely doubtful, it was not on this record such error as would require reversal.

■ The third error claimed, the refusal to the court, when first requested by some of the defendants, to charge the jury that a defendant did not have to take the stand and his failure to testify could not be in any manner considered against him, requires more extended discussion. This is the record. One of the defendants Silverman, requested the charge, two others, Diaz and Bird, joined in the request, the other defendants especially asked by the court whether they wanted the charge, said they did not, and the court then denied the charge. Later on when the jury after having been out several hours came back into court to ask a question, the judge of his own motion stated to the jury that he had been in error in refusing the charge, and that he wished now to correct the error. Thereafter he gave a full and correct charge on the point, to which no one excepted. In it the jury were instructed not only as to the

three who had requested the charge, but as to all of the defendants, that their failure to testify could not be at all taken against them.

All of the appellants then find themselves in a most difficult position when they insist that the refusal of this charge when first requested was error. Those defendants who told the court that they did not want any exception to the refusal of the court to give the charge certainly cannot be heard to complain of its not being given when first requested. The other defendants, who did ask for it and who, because they asked, were entitled to it and could, therefore, have complained if it had not been given,[6] are in no better case. Before the jury brought in its verdict, the court, after frankly confessing error, gave a full and correct charge on the point, and the defendants neither excepted to its giving nor asked further instruction. It is universally held that when an error has been committed and later it is corrected in a formal ruling of the court, it may not be assigned unless it is made clearly to appear that the situation was such that the correction did not remove the effects of the error complained of.[7] Appellants argue that this is such a case: that the jury having been allowed to go out without being properly instructed and having deliberated for many hours, no doubt in that time discussing the failure of the defendants to testify, it was too late to do any good to instruct them in the matter just before they brought in the verdict. On the other hand, it may be more cogently argued that if when the jury came in for instructions they had not been able to make up their minds, but were still undecided, this charge given at defendants' request might well have been of the greatest value to them, indeed of far more value than if given as a part of the general charge. But these are speculations. The law is settled that cases are not reversed unless it appears that the error complained of has reasonably prevented substantial justice being done. Where, as here, the error has been openly confessed and de-

6 Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257.

7 Volkmor v. United States, 6 Cir., 13 F.2d 594; Frantz v. United States, 6 Cir., 62 F.2d 737.

liberately corrected, with no complaint of or exceptions to the manner or substance of the correction made at the time, the original failure to give the charge certainly can not be held reversible error.[8]

■ Some of the appellants, in their specifications of error relied on here, attack as insufficient the proof of mailing as to counts one and two. For the reasons given earlier in this opinion in connection with other claims of error as to counts one and two, if the claims of error were well taken it would not necessitate a reversal. But it is quite plain that they are not well taken. Though the evidence was largely circumstantial in character,[9] there was enough of it to warrant submission of the mailing question to the jury and to establish that the letters were in fact mailed. The charge, submitting the issue, was not excepted to. Indeed it was unexceptionable.

■ The appellant Johnson insists that a verdict should have been directed for him because the court had denied his motion for a speedy trial, and in support of this specification he requests that the record be supplemented. The record shows with complete fullness the facts as to the motions, and that there is no basis for the claim that any substantial right of his has been infringed or denied in respect of affording him a trial or in the denial of his motion.

Unless then there is merit in the point relied on by all of the appellants that a verdict should have been directed because of the variance between indictment and proof, the indictment charging one general conspiracy and the proof at best for the government showing several separate conspiracies, the judgment must be affirmed.

Conceding, say the appellants, that the record does show fraudulent acts and practices on the part of some, or even all, of the defendants, it does not show that these acts were done as part of a general conspiracy, each with the other, to carry out the scheme to defraud alleged in the indictment, and there was therefore a fatal variance for which the case must be reversed. They point particularly to the damaging character of the proof presenting a record of despicable meanness, of trickery, artifice and fraud, portraying some of the defendants as common swindlers, their activities directed to stripping to the point of impoverishment the old, the helpless, and the ignorant.

They insist that in these circumstances the variance was greatly prejudicial for the result of it was to subject the defendants not engaged in those particular acts to the great prejudice of being tried as associates of some of those who were so engaged. They urge, therefore, that this is a case ruled not by United States v. Berger, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, but by Kotteakos v. United States, 66 S.Ct. 1239, in which, on great and careful consideration, it was held that proof of separate conspiracies will not support a conviction on the charge of one general conspiracy. The United States vigorously opposes this position. It insists that the proof furnished ample warrant for a finding that all of the acts of all of the defendants were related to and were effective in a common general scheme and conspiracy to cheat and swindle in the sale of the Plaquemines Company lands, that the trail of the same serpent is over them all. As the United States sees it, Baker, as the president of the Plaquemines Company, was the head and front of the conspiracy. The other defendants were either his agents or co-workers with him in it. It points out that in the Kotteakos case, the variance claimed was conceded, and that not only was this so, but as was carefully pointed out in the opinion, there were many wholly unrelated separate conspiracies shown. They insist that the proof here shows one general conspiracy, but that if this is not so, and in addition to the general conspiracy there were other conspiracies shown, they were so related to and tied in with the conspiracy as to bring

8 Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704; United States v. McGuire, 2 Cir., 64 F.2d 485; Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; Moody v. State, 13 Okl.C. 327, 164 P. 676.

9 Steiner v. United States, 5 Cir., 134 F.2d 931.

this case within the holding of the Berger rather than of the Kotteakos case.

Because the proof presents a record of a rascality and scoundrelism of the meanest and lowest kind, with a grinding of the faces of the poor, certain to arouse feelings of resentment and moral indignation, we have been at the greatest pains to make sure that we fully understand the record, and have given the most earnest and careful consideration to the appellant's claims.

 Agreeing fully with what is said in Kotteakos' case, that we may not permit ourselves to sit in judgment on the facts nor, because we feel that the defendants have been guilty of base and fraudulent conduct to affirm a conviction which has not been legally arrived at, we have read and reread again this lengthy record with a determination that if it does not show a general conspiracy but merely several separate and distinct ones, as in Kotteakos' case, the judgment must be reversed. We have thus read and reread it not merely as to the defendants as a whole but as to each defendant, for the purpose of making sure that none have been convicted not of the conspiracy charged but of separate and distinct conspiracies, each having no real and substantial connection with the other. We have reached the firm conclusion that the evidence made out, sufficiently to support the verdict, the case the government charged, and that the conviction must be affirmed.

As to all of the defendants but Silverman the record leaves in no doubt that they formed one wolf pack. It shows a concerted, plotting, scheming, and conniving in loading and reloading their victims, a concerted scurrying hither and thither to find, a concerted stealthy stalking of their prey. It shows, too, a perfect timing in crowding their victims and in the final moving in for the kill. This could not have been possible had there been no general understanding, no underlying plan.

As to Silverman, on the record perhaps the chief rascal of them all, there is evidence tending to show that he was not an agent of Baker but a collaborator with him, and as to some of the actions, there is

evidence giving an appearance of their dealing with each other at arm's length. But this is by no means all that the record shows. It was for the jury to appraise the evidence as a whole and to determine where the truth lay. We cannot on this record say that the evidence was insufficient to support the jury's verdict that he was a member of the general conspiracy, a party to the general scheme. If, however, we are mistaken in this, and there were two conspiracies, one between Baker and the other defendants and another between Silverman, Baker and some of them, it is perfectly clear that the conspiracy in which Silverman was engaged, if it was a separate conspiracy, was so closely connected with the main, the general conspiracy, as that the variance could not effect, and has not affected, his substantial rights, and the principle laid down in Kopald-Quinn Co. v. United States, 5 Cir., 101 F.2d 633, and Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 controls.

The record being without reversible error, the judgment is affirmed.