### GILES v. UNITED STATES.

#### No. 7960.

Circuit Court of Appeals, Fifth Circuit.

July 27, 1936.

Rehearing Denied Aug. 24, 1936.

SIBLEY, Circuit Judge, dissenting.

———◆———

Will A. Morriss and Will A. Morriss, Jr., both of San Antonio, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment entered on a verdict finding appellant guilty of making and causing the making of false entries in the books of a national bank, in violation of title 12 U.S.C.A. § 592. The serious question presented for decision is whether the law will support a conviction on an indictment charging that defendant caused the false entries to be made.

An indictment in four counts was returned against appellant, an employee of the First National Bank of San Antonio, Tex. Omitting formal parts, the first two counts charged embezzlement on July 25, 1933, respectively, of $1,985.75 and $633.37. Based on the same transactions, the third and fourth counts charged that, with intent to injure and defraud the Commercial National Bank and to deceive the agents or examiners appointed by the Comptroller of the Currency to examine into the affairs of the said bank, he did make and "cause to be made" a certain false entry in a book then and there used by the said banking association in the transaction of its business, known as the individual ledger; the false entries being that the balances shown in the accounts of the San Antonio Public Service Company and the National Life & Accident Insur-ance Company, as of date of July 25, 1933, were, respectively, $7,874.07 instead of $9,859.86 and $1,199.66 instead of $1,863.03.

Defendant was acquitted on counts 1 and 2 of the indictment, charging embezzlement, and convicted on counts 3 and 4, charging the making of false entries, and was sentenced to two years' imprisonment. Error is assigned to the denial of a motion for a directed verdict of acquittal. The facts are not in dispute.

The evidence in the record tends to show that defendant was both a paying and receiving teller of the bank and had in his custody approximately $35,000 to $40,000 daily. About 18 months prior to July 25, 1933, he missed a package of money containing $1,000, from his cage, and was unable to find it or determine who had stolen it. He was afraid to report the shortage for fear of losing his position. To apparently cover this shortage, he adopted a plan of withholding deposit slips from the individual bookkeeper for a day or two and then turning them in, withholding other deposit slips in their place. It is usual for a receiving teller to withhold a deposit slip until the next day, if the deposit is made after he has balanced his cash. Other shortages developed in defendant's cash, as time wore on, until July 25, 1933, when he was approximately $2,500 short. On that day he received a deposit from the San Antonio Public Service Company of $1,985.79 and another deposit from the National Life & Accident Insurance Company of $663.37. He entered the correct amounts of the deposits in the pass books of the customers, but according to his custom withheld the deposit slips from the bookkeeper. The bank failed and closed for business on July 29, 1933, and he then reported his shortage to an official of the bank and told him about withholding the deposit slips. He made good his shortage to the extent of $1,000 shortly thereafter by selling his home, and eventually paid it all before trial. The entries on the individual ledger show the correct amounts except for the two deposit slips withheld. The individual bookkeeper was not under the control of defendant, and he was not authorized to give him instructions. He had never done so in respect of the deposit slips withheld, and there was no connivance between them. Defendant made no changes of any kind in any of the deposit slips temporarily withheld. He was not required to and did not give the bookkeeper a statement of the

day's deposits. All he did was to withhold the deposit slips.

Defendant concedes that the offense of making a false entry may be committed through an innocent agent, but contends that such agency results only if the person charged has in an affirmative way authorized and directed the making of the entry. In support of this he cites the cases of U. S. v. McClarty (D.C.) 191 F. 518 and Id. (D.C.) 191 F. 523; U. S. v. Booker (D. C.) 98 F. 291 and Twining v. U. S. (C. C.A.) 141 F. 41. The two McClarty Cases are directly in point. The president of a national bank was charged in one with conspiring to make false entries in the books of the bank and in the other with the substantive offense. The false entries consisted in showing wrong balances on the books, as in this case, and the falsity was brought about by concealment by defendant of facts that it was his duty to disclose. Demurrers were sustained to the indictments. In the Booker Case, defendant was charged with making false entries in reports to the Comptroller. He verified the reports without taking the trouble to determine their correctness. It was contended that his act was as much within the mischief which the statute intended to provide against as the act of making a false entry, and therefore the court ought by construction bring it within the statute. The court held that the rule of construction was wholly inadmissible, citing authorities, and, as it was not shown that defendant either made any false entries or directed them to be made, a verdict of acquittal was directed. In the Twining Case, defendant was convicted of making false entries. The court was of the opinion that the entries were in fact true, as each resulted from a transaction actually consummated between the officers of the bank and a third party, but the reversal was also put upon the ground that there was not sufficient evidence to justify a finding that the defendant made or directed the entries to be made. These cases are persuasive and tend to support the contention of defendant.

On the other hand, while it is admitted that there is no case directly in point, as applied to the facts in this case, it is contended for the prosecution that the rule that the crime may be committed through an agent is sufficient to support the conviction. The following cases are relied upon. Agnew v. U. S., 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; U. S. v. Youtsey (C.C.) 91 F. 864; Scott v. U. S. (C.C.A.) 130 F. 429; U. S. v. Allis (C.C.) 73 F. 165; U. S. v. Harper (C.C.) 33 F. 471; U. S. v. Fish (C.C.) 24 F. 585; U. S. v. Wilson (C. C.) 176 F. 806; Morse v. U. S. (C.C.A.) 174 F. 539, 20 Ann.Cas. 938; Richardson v. U. S. (C.C.A.) 181 F. 1; Kettenbach v. U. S. (C.C.A.) 202 F. 377. In all these cases it is shown that defendant either made the false entry or affirmatively directed its making, except the Scott Case, in which the charge was conspiracy. Furthermore, the cases of U. S. v. Allis and Kettenbach v. U. S., supra, tend to support the conclusion that a person may be convicted of making a false entry only when he makes it personally or directs another to make it. We do not consider that any case cited on behalf of the United States supports the conclusion that a person may be convicted of making a false entry by merely withholding information from a bookkeeper which causes a false entry to be made. We have found no such case by independent research.

It is evident that the gravamen of the accusation against defendant is that he caused the false entries to be made. The case was submitted to the jury on that theory. In the course of the general charge the court instructed the jury, in substance, that while the statute denounced as an offense the making of a false entry in any book of a national bank, with intent to defraud the bank or deceive its officers or the agents of the Comptroller, the courts had construed the statute to mean also the causing of the making of such false entry, and it was not necessary in order to convict the defendant that the jury should find that he actually did the mechanical operation of making the entries himself, if they should find that he caused their making by concealing or suppressing the deposit slips.

■ It is settled law that criminal statutes are to be strictly construed and may not be extended by implication, unless that is clearly demanded by their terms. In U. S. v. Noveck, 271 U.S. 201–204, 46 S.Ct. 476, 477, 70 L.Ed. 904, the rule is clearly stated as follows: "Statutes will not be read to create crimes, or new degrees or classes of crime, unless the purpose so to do is plain."

■ In construing a statute, to determine the intention of Congress, we may consider other statutes. Section 5480, R.S., prohibiting the mailing of a letter in execution of a fraudulent scheme, simply made

it an offense to place the letter in the mail. The amendment of 1889 (section 1, 25 Stat. 873) added the words, "or cause to be placed." (Now Cr.Code, § 215, 18 U.S.C.A. § 338.) Prior to the amendment it had been held that the offense could be committed through an agent, U. S. v. Flemming (D.C.) 18 F. 907, yet Congress thought it necessary to include in the amendment the words "cause to be placed" to broaden the basis of prosecution to include those who put in motion a sequence of events resulting in the mailing of the letter.

The statute under which defendant was prosecuted (12 U.S.C.A. § 592) is based on section 5209, R.S., as amended by the Act of September 26, 1918, § 7, 40 Stat. 972, enacted contemporaneously with the creation of the Federal Bank System. The section of the Revised Statutes did not contain the words, in respect of the making of a false entry, "cause to be made" or any equivalent terms. It is significant that neither does the amendment. It is plain that the intent of Congress in creating the offense of making a false entry was to control the actions of officers and employees of national banks charged with the duty of accurately keeping their books and records or exercising authority and direction over others who actually made the entries therein. It is reasonable to presume that if Congress had intended the provisions of the act to apply to every employee of a national bank, who by dereliction of duty might remotely contribute to the making of a false entry, appropriate language to that effect would have appeared in the statute.

Of course, in a sense, one who makes a false entry causes it to be made. If he makes an entry himself or directs another to make it, an allegation in the indictment that he caused it to be made may be treated as surplusage and harmless, but where the defendant has neither made a false entry nor directed another to do so, the same allegation is material and injurious. A charge that one has caused a false entry to be made is very much broader than the charge that he made it. Cf. U. S. v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836. The door is opened wide to the introduction of evidence not otherwise admissible. The defendant may be convicted for acts of omission, only remotely connected with the making of the false entry, and hardly sufficient to support the presumption that he intended to defraud or deceive through the making of the false entry.

We consider the allegation of the indictment, that defendant did "cause to be made a certain false entry in a book of the bank," charged a degree and classification of the offense not within the letter or intent of the law. This conclusion is supported by the following authorities: U. S. v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676; Fasulo v. U. S., 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443; U. S. v. Fruit Growers Exp. Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739.

The evidence in the record conclusively shows that defendant neither made the false entries nor did anything that could be considered as a direction to the bookkeeper to make them. Without the charge that he caused the entries to be made he could not have been convicted. It follows that it was prejudicial error to overrule the motion for a directed verdict of acquittal.

As what has been said above requires a reversal of the judgment and it is not probable that any different evidence will be introduced on a new trial, it is unnecessary to discuss other assignments of error.

Reversed and remanded.

SIBLEY, Circuit Judge (dissenting).

I cannot agree that the accused was entitled to a directed verdict of acquittal. The statute, 12 U.S.C.A. § 592, criminates any officer, director, agent, or employee of a member bank "who makes any false entry" in any book of such bank with intent to injure or defraud the bank or to deceive its officers, or the Comptroller of the Currency or his agents. The indictment charges that the accused "made and caused to be made" the false entries in question. The language "caused to be made" is broader than the statute if allowed to include cases of accident, neglect, or other unintended causations, but if limited to intentional causation it does not exceed the statute. No point, however, is pressed against the indictment. The question is whether under the facts proven the accused made the false entries within the legal meaning of the statute.

One may do a criminal deed directly with his own hands. He may contrive indirect mechanical means, as a trap or spring gun. The acts of an animal or an irresponsible human such as a child or a

lunatic may be availed of; or an innocent human who does not know a crime is going forward. In either case the contriver is the sole criminal. One who by his act diverts the natural course of events, or starts a new train of them, in a manner likely and with a design to produce a criminal deed and succeeds, commits that deed. This accused as a bank teller had been short in his cash for eighteen months, and had been during that time systematically withholding from record on the bank's books and adding to his cash enough of the deposits received by him to cover his shortage and still keep the books in balance, with the admitted intention of deceiving the officers of the bank. Every day a series of correspondingly false entries was innocently made by the bookkeeper from the checks and deposit slips which were turned over to the bookkeeper for that purpose. The intended deceit was entirely successful until the bank failed. If this teller is not punishable, then every officer and employee of a bank may with impunity falsify every record of the bank if he can deceive the maker of it. The rule of strict construction of a criminal law ought not to be pressed so far. This statute plainly intends to punish the falsification of bank records with intent to deceive or defraud. If false entries are deliberately produced, although through an ignorantly innocent agent, the bank employee who concocts the plan and achieves the result is, in my opinion, guilty. This innocent bookkeeper was the teller's real though unconscious agent in making the entries; as truly so as if the false entries had been requested in words. It was the bookkeeper's duty each day to call upon the teller for the day's deposit slips and checks in order to make book entries from them. It was the teller's duty to give all of them. The two were to co-operate to make a correct daily record of the bank's condition. On the day in question the teller did not abstain from all dealing with the bookkeeper. His purpose could not be served in that way. He put some of the deposit slips into the usual drawer for the bookkeeper to get, but hid those intended to be withheld in a private box. This was not inaction or mere nonfeasance, but was purposeful affirmative action. The natural course of events was intentionally changed. The effect of what he did was to say silently to the bookkeeper: "These deposit slips in the drawer are all—make the book entries according to them." I understand

the majority opinion to admit that if he had so spoken it would be enough.

But even if we assume that to put some deposit slips where the bookkeeper would get them and to hide others where he could not get them is not an act but only an omission, still an omission to prevent a foreseen consequence which there is a legal duty to prevent may charge one criminally with that consequence. In Regina v. Conde, 10 Cox C.C. 547, the law of homicide was thus stated: "If the prisoners or either of them wilfully withheld necessary food from the deceased with a wilful determination by withholding sustenance to cause his death the party so withholding food is guilty of murder." In Regina v. Instan, 1 Q.B. 450, a case of death from neglect of a sick and helpless person, the legal duty was found in the circumstances, though there was no legal relationship or express contract putting the care of the deceased upon the accused. Again in United States v. Knowles, Fed.Cas. No. 15,540, Justice Field applied the principle to a sea captain who took no steps to save a seaman washed overboard in a storm; though the federal statutes defining murder and manslaughter speak of killing a human being and not of causing his death or letting him die. But I repeat, the present case is not one of a mere failure to prevent a consequence, but is one of contriving that consequence and so fathering it as to make it wholly the contriver's own. The bookkeeper in making these false entries was doing the will of the teller, though he did not know it. The false entries are in law the acts of the teller who planned them and did all he needed to do to produce them. If, with intent to kill, poisoned candy be sent by mail and be by an innocent postman in the course of his duty delivered to the addressee who eats and dies, the latter is murdered by the contriver of the death as certainly as though he had directly and by force compelled the taking of the poison. This teller intentionally poisoned the well of information from which he knew the bookkeeper would drink. He should be held answerable as for his own act for the tragedy to truth which resulted exactly according to his purpose. See, generally, Wharton Criminal Law (12th Ed.) c. 7, especially §§ 203, 208.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above

numbered and entitled cause is of the opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.