**MANSFIELD et al. v. UNITED STATES.**
No. 11366.

Circuit Court of Appeals, Fifth Circuit.
May 23, 1946.

Rehearing Denied July 2, 1946.

David H. Cannon and John C. Packard, both of Los Angeles, Cal., Theodore E. Rein, of Chicago, Ill., George Rodriguez, of El Paso, Tex., and T. F. Monroe, of Dallas, Tex., for appellants.

James McCollum Burnett, U. S. Atty., and H. W. Moursund, Sp. Atty., Department of Justice, both of San Antonio, Tex., H. T. Nichols, Sp. Asst. to U. S. Atty., of Atlanta, Ga., and Holvey Williams, Asst. U. S. Atty., of El Paso, Tex., for appellee.

Before HOLMES, McCORD, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

Appellants were tried upon an indictment in eleven counts, of which counts one to five charged violations of the Mail Fraud Act;[1] six to ten, violations of the fraud provisions of the Securities Act;[2] eleven, a conspiracy to violate the Mail Fraud Statute and the fraud provisions of the Securities Act.[3] Thigpen and Bailey were convicted on all counts; Mansfield was convicted on counts two to eleven; Browne, Negley, Dobson, Barnett, Stowell, Woodard, and the two Newmans, were convicted on counts one and eleven. They severally seek reversal on the grounds (a) that the indictment is fatally defective; (b) that the evidence was not sufficient to support the verdict; (c) that the court erred in denying the motions to dismiss and the motions to find the defendants not guilty.

The indictment charged that the defendants, from 1938 to the date of the filing of the indictment, devised and intended to devise a scheme and artifice to defraud various persons and to obtain money and property from them by means of false and fraudulent representations and promises. It further charged that they mailed and caused to be mailed, in furtherance of said scheme, certain letters and warranty deeds, which were set out in full, in connection with the fraud; that they employed the fraudulent scheme in the sale of securities, namely, investment contracts evidenced by warranty deeds purporting to convey in fee simple certain lands in Brewster County, Texas, coupled with collateral agreements and promises that oil wells would be and were being drilled thereon. The eleventh count of the indictment charged a conspiracy to violate the Mail Fraud Act and the Securities Act. It alleged nine overt acts committed in furtherance of said conspiracy. The entire alleged fraudulent scheme is disclosed in the indictment, and fully informed the defendants of the nature and cause of the accusations against them.[4]

The indictment charged and the proof established but one scheme to defraud, which consisted of a promotion by the appellants of the sale of land with the ultimate object of obtaining money and property from numerous individuals. A single scheme to defraud may involve a multiplicity of ways and means of action and procedure. It may be such that the complete execution of it would involve the commission of more than one criminal offense. Mere details may be changed and the scheme remain the same.[5]

The evidence showed that in March, 1938, appellant Frank Mansfield arranged to buy certain land located in Block G-4, Brewster County, Texas, from the Central Securities Company with offices in San Antonio, Texas, at a price of $1.50 per acre, and deeds were to be made for the land as appellant paid for it. This was not an exclusive contract, and the company made sales from the tract of land to other individuals on the same basis. Shortly afterwards Mansfield entered into an

---

[1] 18 U.S.C.A. § 338.

[2] 15 U.S.C.A. § 77q(a) (1).

[3] 18 U.S.C.A. § 88.

[4] Hammer v. United States, 271 U.S. 620, 625, 46 S.Ct. 603, 70 L.Ed. 1118; United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788; Hart v. United States, 5 Cir., 112 F.2d 128, certiorari denied 311 U.S. 684, 61 S.Ct. 60, 85 L.Ed. 441; Morris v. United States, 5 Cir., 112 F.2d 522, certiorari denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418; Holmes v. United States, 8 Cir., 134 F.2d 125, certiorari denied 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722.

[5] Weiss v. United States, 5 Cir., 120 F.2d 472, Id., 122 F.2d 675.

agreement with appellant L. G. Thigpen in San Antonio, Texas, whereby the latter was to go to California and engage in the retail distribution of the land to residents of that state. He opened an office in Los Angeles under the name of the Interstate Realty Company, employed the other appellants as salesmen, and began an active sales campaign. The land was sold to numerous investors in California as potential oil land, and in order to promote its' sale Thigpen spudded in on two different locations in Block G-4, but operations were soon abandoned and oil was never found. The investors were assured that if they struck oil they would realize large bonuses from major oil companies from the sale of leases and royalties.

The record shows that this land is very inaccessible, being eighty-five miles from the nearest paved highway; that the surface of the land is of little value for any purpose, there being only a sparse desert growth; that some of the land is located in small valleys, while other parts are on mountain peaks; that it is spotted with volcanic plugs and lava flow, and the rocks are largely igneous; that the entire area is such that the prospects of discovering oil and gas are decidedly unfavorable. Forty-five wells had previously been drilled in this county, and all of them were completed as dry holes, the nearest producing well being approximately one hundred miles away.

From time to time as the scheme progressed, Mansfield would call at the Central Securities Company and purchase land, usually a section at a time, pay for it, and obtain deeds. Beginning in June, 1940, without the knowledge of the owner, he executed numerous spurious deeds to land that belonged to the Central Securities Company. He also executed a warranty deed to W. H. Young conveying all of Section 203, which he in fact owned, having purchased it from Central Securities Company; but thereafter, while the title was in Young, he executed forty-three deeds to the land, conveying a total of 1280 acres from a 640-acre section, his grantees receiving no title whatever. Consequently, they could not have received any benefit from Thigpen's well if he had struck oil.

The price at which nearly all the sales were effected was $20 per acre. The salesmen used various methods of making sales, but the record shows that all were made by false representations, fraudulent maps, and promises which they had no intention of fulfilling. They seek to prove that they did not have knowedge of the character of the land, and therefore did not participate in a scheme to defraud which constituted conspiracy. We find ample and substantial evidence in the record that all of the appellants participated in varying degrees in the fraud disclosed by the proof. That evidence fully warranted their conviction on the conspiracy count.[6]

Appellants contend that what was sold was land and nothing else, and that this could not constitute a violation of the Securties Act. In Securities and Exchange Commission v. Joiner Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88, the Supreme Court held that where promoters offered and sold to investors instruments purporting to be assignments of leaseholds [7] in specific portions of a tract of potential Texas oil and gas land, the selling literature indicating that investors would earn a profit through the efforts of the promoter in drilling an oil-producing well on the land, defendants

---

[6] Kopald-Quinn & Co. v. United States, 5 Cir., 101 F 2d 628, certiorari denied (Ricebaum v. United States) 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1512; Baker v. United States, 8 Cir., 115 F.2d 533, 540, certiorari denied 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128; United States v. Monjar, 3 Cir., 147 F.2d 916, certiorari denied 325 U.S. 859, 65 S.Ct. 1191, 89 L.Ed. 1979.

[7] Under Texas law, a lessor's interest in a Texas oil and gas lease is a real property estate which can be the subject of a fee simple title. Downman v. Texas, 231 U.S. 353, 34 S.Ct. 62, 58 L.Ed. 264; Railroad Commission v. Rowan & Nichols Oil Co., 310 U.S. 573, 579, 60 S.Ct. 1021, 84 L.Ed. 1368; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County et al. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A. L.R. 566; Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961.

were engaged in the sale of investment contracts.[8] The record shows that appellants made sales of the land by means of false promises and agreements to drill oil wells from which the investors would earn large profits. Warranty deeds purporting to convey title in such circumstances constituted investment contracts within the meaning of the Securities Act.[9] It was the practice of those appellants who made sales of the land to order warranty deeds from appellant Mansfield at San Antonio, Texas, by mail; and the latter then executed deeds and mailed them to the County Clerk at Alpine, Texas, with instructions to forward them after recordation to one of the appellants in California, or to an investor. The scheme could not have been carried out without the use of the mails.

Appellants contend that there was no conspiracy or intent to use the mails in furtherance of a fraudulent scheme. The conspiracy consisted of a scheme to defraud people in the sale of land. The Government charged, not a conspiracy to commit a single act, but a continuing conspiracy to carry on the fraud for a long period of time. It is the rule that where the accomplishment of the conspiracy contemplates the use of the mails, and such use is essential to the execution of the scheme, intent on the part of the conspirators to use the mails may be inferred. In the instant case the use of the mails was indispensable in carrying out the conspiracy. This warranted the finding that all who feloniously participated in the scheme were guilty of conspiracy to use the mails to defraud, although they did not themselves make use of the mails. It was not necessary to show intent in connection with the substantive counts of the indictment. It was enough to show that the mails were used and that the scheme was one which reasonably contemplated the use of the mails.[10]

Appellants contend that the trial court committed error in the admission of certain evidence and in refusing to give the special instructions to the jury requested by them. These contentions are without support in the record. We think the verdict was amply warranted by the evidence as to all of the appellants, and the judgments appealed from are affirmed.

---

[8] Securities and Exchange Commission v. W. J. Howey Co., et al., 5 Cir., 151 F.2d 714, appeal pending.

[9] 15 U.S.C.A. § 77b(1).

[10] Spivey v. United States, 5 Cir., 109 F.2d 181, 184, certiorari denied 310 U. S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401; Morris v. United States, 5 Cir., 112 F. 2d 522, 530, certiorari denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418; Guardali-bini v. United States, 5 Cir., 128 F.2d 984; Steiner v. United States, 5 Cir., 134 F.2d 931, certiorari denied 319 U. S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721; Blue v. United States, 6 Cir., 138 F.2d 351, 359, certiorari denied, 322 U.S. 736, 64 S.Ct. 1046, 88 L.Ed. 1570; United States v. Cohen, 2 Cir., 145 F.2d 82, certiorari denied 323 U.S. 799, 65 S.Ct. 440, 89 L. Ed. 636; Marshall v. United States, 9 Cir., 146 F.2d 618, 157 A.L.R. 241.