### UNITED STATES v. KUIKEN.

#### Cr. No. 46723.

United States District Court
W. D. Texas, El Paso Division.

Dec. 20, 1951.

Charles F. Herring, U. S. Atty., San Antonio, Tex., Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for plaintiff.

W. C. Peticolas, El Paso, Tex., and Bradley E. Fisk, El Paso, Tex., for defendant.

THOMASON, District Judge.

The indictment in this case is in five counts, each of which purports to charge a violation of the mail fraud statute, to wit, Section 1341 of Title 18, United States Code: The first count is as follows:

"The Grand Jury Charges:

"1. That commencing on or about the 5th day of June, 1950, and continuing thereafter until on or about the 20th day of August, 1950, Silas Theophilus Kuiken devised and intended to devise a scheme and artifice to defraud persons who would be willing to accept and cash his worthless instruments in writing (checks) and to obtain money and property by means of the following false and fraudulent pretenses, representations, and promises, well knowing at the time that same would be false when made: said scheme being to represent, pretend and promise that said instruments in writing to be given by defendant, were bona fide and would be paid when presented to the National City Bank, Evansville, Indiana, the bank on which they were drawn, and to represent that the defendant was an attorney for the Standard Oil Company of Indiana and was in the city in which the person to be defrauded resided on business for said Company and to make other false claims and to pretend that the woman traveling with him was his wife. A part of said scheme was also to cash a series of these worthless instruments (checks) in a certain city over a period of days and to then move on to another place before his fraud had been discovered and there further perpetrate his fraudulent scheme. The scheme was further to perpetrate his fraud on one person and then to have other prospective victims know that the former one had cashed one of his said checks and thereby induce the latter victim or victims to do likewise."

"2. On the 19th day of July, 1950, in El Paso County, Texas, within said District and Division and in the jurisdiction of this Court, Silas Theophilus Kuiken, for the purpose of executing the aforesaid scheme and artifice and attempting so to do, caused to be placed in an authorized depository for mail matter a letter containing a check, payable to 'Cash', in the amount of $25.00, addressed to The Interstate National Bank, Kansas City, Missouri, to be sent and delivered by the Post Office Establishment of the United States."

Each of the other counts is identical with this one, except as to the date the letter in question was mailed and the description of the check that it contained.

The evidence established that the defendant was an attorney of Evansville, Indiana, and took an automobile trip from that City to California, beginning about July 3, 1950, and ending with his arrest in California on September 6th. It was shown that his small bank account with the National City Bank of Evansville became defunct approximately one month before he began this trip. Some fifteen checks drawn on this bank were introduced in evidence, that he gave on the trip, all of which were returned on account of insufficient funds. It was shown that these checks totaled between two and three thousand dollars. The first of these were given in Oklahoma City and were dated July 3rd through the 8th. The ones in El Paso were dated from July 17th to the 27th, inclusive. Those in California were dated from August 25th to September 5th. The evidence further showed that three Weseman brothers operated the Weseman Tourist Motel in El Paso, where the defendant stayed and that on July 17th defendant cashed a $200.00 check with one of the brothers. On July 27th he cashed another $200.00 check with another brother, using as a means to get the second check cashed the fact that one of the operators had cashed the first one. A similar situation existed at a filling station where he cashed three checks. He persuaded the manager of the station, in the presence of an attendant, to cash one check and, on following dates, returned and persuaded the attendant to cash two checks. The attendant testified that he cashed these two checks solely because the manager had cashed the first one. In my opinion, the jury was entirely justified in believing that a scheme existed, as alleged in the indictment. In fact, virtually every material allegation of the indictment was established by abundant evidence. At the close of the Government's case, defendant rested without testifying or offering any evidence and filed a motion for judgment of acquittal based almost entirely on the proposition that the fraud, if any, had reached its fruition before the mails were used. It was strenuously urged that the cashing of each check was a separate and isolated transaction and that the mails, in each respective instance, was not used until the money had been received by the defendant and the check had passed on to the victim.

The jury was charged generally as to a mail fraud violation and was specifically charged: "In this connection, you are further charged that the scheme to defraud must be in existence and in the mind of the defendant when the use of the mails is employed". The defense relied largely on Kann v. United States, 323 U.S. 88, 65 S. Ct. 148, 89 L.Ed. 88 and Dyhre v. Hudspeth, 10 Cir., 106 F.2d 286. If I could bring myself to believe, as defendant insists, that each of the transactions involved was an isolated and separate offense in no way connected with each other, I would have felt no hesitancy in granting the motion. However, as can plainly be seen by the reading of the indictment, several situations are alleged which, in my opinion, make the scheme a continuing one and connect one part with the other. I feel that the jury was justified in believing that the checks were given on an out of town bank in order that more time might be obtained for further perpetrating his fraud and in not being detected. It was definitely shown that many fraudulent representations were made.

The Kann case uses some language which tends to establish defendant's position. However, the facts are distinguishable in several respects from this case and most

of its language in this regard was explained away in United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 337, 91 L.Ed. 359. For instance, the Sheridan case said: "Indeed the Kann opinion recognized that in other circumstances a different result might be called for, even under the explicit and restricted purposive requirement of § 215. For in putting aside the cases sustaining convictions where use of the mails was 'a means of concealment so that further frauds which are part of the scheme may be perpetrated,' the Court said: 'In these the mailing has ordinarily had a much closer relation to further fraudulent conduct than has the mere clearing of a check, although it is conceivable that this alone, in some settings, would be enough.' 323 U.S. at page 95, 65 S.Ct. at page 151, 89 L.Ed. 88."

Dyhre v. Hudspeth has given me considerable more concern than has the Kann case, and were it not for the several allegations in the instant indictment which evidently were not in the Dyhre indictment, I would feel that it was direct authority for defendant's proposition. It seems to me, however, that the Court, in the Dyhre case, entirely disregarded or overlooked the theory of such holdings as United States v. Lowe, 7 Cir., 115 F.2d 596; Dunham v. United States, 5 Cir., 125 F.2d 895; and United States v. Riedel, 7 Cir., 126 F.2d 81, to the effect that where the use of the mails was "a means of concealment so that further frauds which are part of the scheme may be perpetrated", the offense is considered as continuing. In this connection, it will be noted that all of these checks were drawn on the National City Bank, of Evansville, Indiana, and were cashed over the entire route from Indiana, through Texas, to California. It is my opinion that none of the cases relied on by the defendant hold or intend to hold that a mail fraud violation cannot have as its basis the cashing of worthless checks. In fact, the Kann case intimates that even one cashing, under the proper setting, might be sufficient. If Dyhre v. Hudspeth intends to so hold, it is in conflict with the above authorities and with Bauman v. United States, 5 Cir., 156

F.2d 534, all of which have been decided since the Dyhre case.

Probably the most usual mail fraud violation is based on the selling of worthless stocks. To my mind there is no difference in the selling of worthless stocks and the selling or cashing of worthless checks. See Mansfield v. United States, 5 Cir., 155 F.2d 952. One can be perpetrated by a continuing scheme the same as the other. The jury was definitely charged, as above shown, that a scheme to defraud must have been devised by defendant and that it must have continued and been in existence at the time the mails were used. The jury promptly found the defendant guilty of all five counts of the indictment. I, therefore, conclude and hold that the indictment alleges a continuing scheme and that the same was established by competent evidence and that the mails were employed during its existence. I, therefore, on November 6, 1951, sentenced the defendant to serve fifteen months, in addition to approximately ten months that he had already been confined.