**PEREIRA et al. v. UNITED STATES.**

No. 14980.

United States Court of Appeals
Fifth Circuit.

March 11, 1953.

Rehearing Denied April 3, 1953.

W. H. Fryer and Coyne Milstead, El Paso, Tex., for appellant.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., Charles F. Herring, U. S. Atty., Austin, Tex., Francis C. Broaddus, Jr., Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The indictment charged the defendants with nine violations of the mail fraud statute, 18 U.S.C.A. § 1341, a violation of the National Stolen Property Act, 18 U.S.C.A. § 2314, and conspiracy to commit the aforesaid substantive offenses, 18 U.S.C.A. § 371. Eight of the counts under the mail fraud statute were dismissed by the district court leaving Count One under the mail fraud statute, Count Ten under the National Stolen Property Act, and Count Eleven, the conspiracy charge. The jury found the defendants guilty as charged and the court sentenced each of them to the maximum confinement under Count One, five years; the maximum confinement under Count Ten, ten years, to run concurrently with the sentence under Count One; and a cumulative sentence of two years confinement under Count Eleven.

The errors relied on arise out of rulings on the sufficiency of the indictment, the competency of a witness, admissibility of testimony, instructions to the jury, failure to require the Government to elect as between Counts One, Ten, and Eleven, plurality of punishment for the same offense, and sufficiency of the evidence to support the verdict and judgment.

The first count of the indictment brought under 18 U.S.C.A. § 1341 charges that between certain dates the defendants devised and intended to devise a scheme and artifice to defraud a woman victim and to obtain money and property by means of false and fraudulent pretenses. The alleged scheme is described substantially as follows: to represent that Pereira was obtaining a divorce and was to receive as a settlement in said proceedings $48,000; that he was a wealthy businessman, a hotel man of wide experience with an option to buy the Washington Hotel in Greenville, Texas, for which he was to pay $78,000; that such was a fine financial proposition and would earn a fine living for the victim and Pereira for the rest of their lives; that he needed immediately cash for this purpose and as a result thereof, that the victim advanced to him $35,286.78; that Brading was a wealthy Texas oil man with many leases and holdings over Texas, New Mexico and other states; that he was about to close an oil lease in Texas which would net immediately large proceeds; and that, if the victim would lend Pereira $5,000, Pereira would double his money in the very near future; that with this understanding the victim lent the defendants $5,000; that both the defendants represented that Pereira was violently in love with the victim and, as a result of said representation, the victim

was caused to take extended trips over the United States with one or both of the defendants and was induced to marry Pereira in Kansas City, Missouri, on the 25th day of May, 1951.

Count One further charges that for the purpose of executing said scheme and artifices and attempting so to do, the defendants, Pereira and Brading, caused to be placed in the mails at El Paso, Texas, a letter addressed to the Citizen National Trust & Savings Bank, Los Angeles, California.

The tenth count brought under 18 U.S. C.A. 2314 charges that on or about June 15, 1951, the defendants with unlawful and fraudulent intent caused to be transported in interstate commerce from El Paso, Texas, to Los Angeles, California, a security of the value of more than $5,000 knowing said security to have been obtained by fraud. The evidence disclosed that the security and the transportation described in the tenth count constituted the mail item described in the first count.

The eleventh count brought under 18 U.S.C.A. § 371 charges that the defendants conspired to commit the substantive offenses described in the preceding counts.

The victim was past 55 years of age, a widow who had been married twice. Under the will of her second husband, some years older than she, she had received a considerable estate. She and the defendant Pereira were married on May 25, 1951. Subsequently, on November 16 of the same year, after the indictment was returned but before the trial, they were divorced. Most of her testimony was admitted over the objections of the defendant Pereira as to her competency to testify to matters occurring after the marriage and to confidential communications with her husband. Some of her testimony was objected to by the defendant Brading also on the ground that as to him it was hearsay.

The victim and her young half sister had taken a trip to El Paso, Texas, where the half sister was to be treated by a dentist. As they stopped their automobile in front of the Del Norte Hotel, they were greeted by a stranger, the defendant Brading, who in a short time introduced them to his companion, the defendant Pereira. Within an hour the four were drinking cocktails in the Del Norte Hotel and in a couple of hours they were on a party in Juarez. The victim testified that she thought fate had brought them together and she invited these men to be house guests at her home in Roswell, New Mexico, and while there Pereira received a telegram signed Curtis that his divorce would be granted effective April 28; that distribution of the property would be made May 25, and his net share would be $48,895.

A few days later Brading proposed that the victim let Pereira have $5,000 for oil leases on which he could double his money and that Pereira would pay her back. After the victim had given her check for that sum Brading left Roswell. Several days later she and Pereira returned to El Paso where Brading joined them. There were more parties in Juarez and they returned to Roswell for a birthday party for Pereira on May 3.

With the proceeds of a $1,000 check which the victim had cashed and given to Pereira, she and Pereira took a trip to Wichita Falls. Brading joined them there and the three drove to Dallas where the victim shopped at Neiman-Marcus and other stores. They left Brading at Dallas and went to Hot Springs for several days and then on to Kansas City. At the hotels in each place they observed the proprieties of registering in their own names for separate rooms. They were married at Kansas City on May 25 with the victim's half sister and Brading attending the wedding.

The victim then gave Pereira $6,956.55 to buy a $4,750 Cadillac automobile in which the four returned to Texas. Pereira kept the change. At Greenville they looked at the Washington Hotel and drove on to Dallas where Pereira discussed with her the purchase of the hotel on which Pereira showed her a supposed option and later a telegram from his supposed broker, E. J. Wilson, 1414 Electric Building, Fort Worth, Texas, granting a seven day extension. The victim told him that she had some securities on which she was not making a large return; that she knew him to

be capable and trusted him; and that she could sell the securities. She had her broker in Los Angeles, California, sell some securities and received from him a check for $35,-286.78. She and Pereira went to El Paso where she endorsed the check to Pereira, who placed it with the bank for collection, for which purpose it was mailed to the bank on which it was drawn in Los Angeles, California. On their return to Roswell they met Brading. About 5 o'clock on the morning of June 19, Brading and Pereira drove the Cadillac out of Roswell ostensibly to pick up some oil leases. On the same day Pereira collected the proceeds of the $35,286.78 check which had been cleared. The victim did not see either of them again until seven months later when they came into the courtroom.

The clerks of the Denver courts testified that there was no divorce case there to which Pereira was a party. The owner and the operator of the Washington Hotel in Greenville, Texas, denied knowledge of any option to Pereira or any negotiations for the purchase of the hotel. Witnesses from the Western Union testified that the Curtis Telegram and the Wilson telegram were transmitted over their facilities. A handwriting expert expressed the opinion that the Curtis telegram was printed by Pereira. The operator of a telephone answering service at 1414 Electric Building, Fort Worth, Texas, identified Brading as a customer who had registered with her under the name of E. J. Wilson. Bank employees identified the broker's check as having been placed with them by Pereira for collection; that it was mailed to the Los Angeles bank upon which it was drawn for payment; that it was paid and a cashier's check was issued to Pereira and he cashed that check.

■ Count One is attacked as duplicitous, as charging two separate and distinct schemes and artifices to defraud; one to get the $35,286.78 for the hotel and the other, the $5,000 for the oil leases. We think it clear that the charge was of only one scheme and that to defraud the victim of money. It is not material that different means were alleged to effectuate the same scheme nor that false representations were alleged concerning each defendant. Mansfield v. United States, 5 Cir., 155 F.2d 952; Kuiken v. United States, 5 Cir., 196 F. 2d 223, approving district court's opinion 101 F.Supp. 929.

■ It is insisted that a plurality of offenses was charged that since the Government was not compelled to elect upon which it relied, double punishment was assessed against each appellant for a single criminal act. A conviction under Count One of the indictment required proof that the defendants devised the scheme to defraud, and that in executing the scheme they caused the mails to be used as alleged. A conviction under Count Ten required proof that the defendants fraudulently caused to be transported in interstate commerce a security of the value of more than $5,000 as alleged. A defendant cannot be put in jeopardy for the same offense more than once, but a single act may constitute a number of offenses and, if proof of an additional fact is necessary to constitute one of the offenses, an acquittal or conviction under the other does not exempt the defendant from such prosecution. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489. Each of the substantive offenses charged could be committed by a single individual, and the conspiracy was separate and distinct from the substantive offenses. United States v. Momsen, 7 Cir., 115 F.2d 635; Gebardi v. United States, 287 U.S. 112, 122, 53 S.Ct. 35, 77 L.Ed. 206, Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

■ It is insisted that the victim was not a competent witness on matters transpiring during the marriage and that confidential communications between her and her husband were privileged and inadmissible. Under Rule 26, Federal Rules of Criminal Procedure, 18 U.S.C.A., these matters are governed "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The marriage having been dissolved by a decree of divorce after the indictment but prior to the trial, the wife became a competent witness generally, but her competency to testify to any communications between hus-

band and wife which were confidential and privileged remained unaffected by the divorce. 58 Am.Jur., Witnesses, § 379; United States v. Walker, 2 Cir., 176 F.2d 564, 568; Annotation, 95 L.Ed. 310; VIII Wigmore on Evidence (3rd ed.) § 2341.

■ Since Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, the wife has been competent to testify for her husband in criminal trials in the Courts of the United States; Price v. United States, 5 Cir., 68 F.2d 133, 135. The extent to which she is now a competent witness against her husband has been the subject of much discussion. See United States v. Walker, 2 Cir., 176 F.2d 564; United States v. Lutwak, 7 Cir., 195 F.2d 748, 758; Annotation, 95 L.Ed. 309, et seq. It is sufficient for us to mark the exception that is decisive of the question in this case. The evidence went to show that, insofar as the defendant Pereira was concerned, the marriage relation was merely a sham and a pretense dishonestly assumed as a means of perpetrating a fraud, and he will not be permitted to use the relation to close the lips of the victim and to shield himself from the truth. See Clark v. United States, 289 U.S. 1, 14, 53 S.Ct. 465, 77 L. Ed. 993; Barclay v. Commonwealth, 116 Ky. 275, 76 S.W. 4, 5; Cf. VIII Wigmore on Evidence, (3rd ed.) § 2230, Note 3; § 2298, United States v. Graham, D.C., 87 F.Supp. 237, 241, 242.

■ There was ample evidence of the conspiracy between Pereira and Brading, and Pereira's conversations with the victim pursuant to that conspiracy were not hearsay as to Brading. See May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994; Montford v. United States, 5 Cir., 200 F.2d 759.

■ The witness Gibson was not shown by the evidence to be a guilty participant in the fraud or an accomplice, and an instruction as to the credit to be given to his testimony was not required. See McLendon v. United States, 8 Cir., 19 F.2d 465; 22 C.J. S., Criminal Law, § 786.

This Court has held that when the evidence discloses ill will, prejudice and bias, it is error for the court to refuse a proper requested charge as to the consideration by the jury of such bias or prejudice on the part of a witness. Coleman v. United States, 5 Cir., 167 F.2d 837, 841. In the present case, the victim is not *per se* a biased or prejudiced witness. In her testimony she apparently exhibited no venom, ill will or hatred. There was no attempt to disprove anything that she said. The district judge did charge the jury generally:

"In weighing the testimony of each witness, you should give it careful scrutiny and consider all the circumstances under which the witness testified; his appearance and demeanor on the stand; the relation which he bears to the Government or the defendant, the manner in which he might be affected by the verdict; his manner of testifying, his apparent candor and fairness, or lack thereof, the reasonableness or unreasonableness of his story, the extent to which he is corroborated or contradicted by other credible evidence, and, in short, any circumstances that tend to throw light upon his credibility. Applying the tests which I have just stated, it is for you to determine the weight which is to be given to the testimony of each witness."

■ Under the circumstances of this case, we think that was sufficient, and that a charge on the assumed bias or prejudice of the victim as a witness was not required.

■ Instruction No. 1 requested by the defendants read in pertinent part as follows:

"Gentlemen of the Jury:

"The defendant in a criminal prosecution is not called upon to prove his innocence, nor need he do so in order to secure an acquittal, but such acquittal must necessarily occur unless the prosecution has proven the defendant's guilt beyond a reasonable doubt."

In its oral charge and in given requested charges the district court instructed the jury as to the burden of proof resting on the Government to establish the defendant's guilt by the evidence beyond a reasonable doubt. The appellants insist that the jury should have been affirmatively instructed,

that the failure of a defendant to avail himself of the privilege of testifying does not create any presumption against him. 18 U.S.C.A. § 3481; Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257. The answer is that no such charge was requested as in Bruno v. United States, supra; see Chadwick v. United States, 5 Cir., 117 F.2d 902, 904; nor was any exception reserved to the court's oral charge for failing so to instruct the jury; Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ The court did not err in declining to give the usual charge on circumstantial evidence, because the circumstances were only corroborative and the case was established by direct testimony if believed by the jury, 23 C.J.S., Criminal Law, § 1250; Campbell v. United States, 5 Cir., 47 F.2d 70, 71.

Other requested charges were substantially covered by the court's oral charge or by given requested charges or were properly refused.

■ The evidence was ample to support the verdict of guilty under each count of the indictment. The evidence went to show that Brading sent a fake telegram authorizing a seven day extension of the supposed option to purchase the hotel signed "E. J. Wilson", a fictitious broker, on June 13, 1951, the same day on which the victim's real broker mailed her the $35,286.78 check from California. When the victim received that check, she endorsed it over to Pereira who in turn endorsed it and it was mailed back to the California bank on which it was drawn. The return of that check from Texas to California constitutes the mailing referred to in the First Count, and the interstate transportation of a security with knowledge that it had been obtained by fraud referred to in the Tenth Count. In mailing the check back to the bank in California on which it was drawn, the El Paso, Texas, bank sent "instructions to wire fate", meaning to wire whether the item was paid or not. Upon receiving a telegram stating that the check had been paid, the bank in

El Paso gave Pereira its cashier's check for $35,286.01, which Pereira promptly cashed on June 19, 1951. At about 5 o'clock on that same morning, Pereira and Brading had driven the Cadillac out of Roswell, and according to their hopes, out of the victim's life. The evidence is clear and convincing that Brading was a guilty partner in the crime from the day he introduced the victim to Pereira on up to the culmination of the fraud. Brading's participation meets the test formerly prescribed in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919:

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in United States v. Peoni, 2 Cir., 100 F. 2d 401, 402."

It is clear also that the perpetration of the fraudulent scheme contemplated the use of the mails in transporting checks and securities between California and Texas. See Mansfield v. United States, 5 Cir., 155 F.2d 952, 955; United States v. Cohen, 2 Cir., 145 F.2d 82, 90; Hart v. United States, 5 Cir., 112 F.2d 128, 131.

■ It is said, however, that Section 2314 does not now cover one who "causes to be transported" in interstate commerce a security knowing the same to have been obtained by fraud. As the Section appeared in the 1940 edition of the United States Code, Title 18, Section 415, the word "transport" was each time followed by "or cause to be transported". See also 53 Stat. 1178. The reviser's note to the present Section, 18 U.S.C.A. § 2314, comments that such reference "was omitted as unnecessary in view of definition of 'principal' in section 2 of this title." That same stereotyped explanation appears in the reviser's note to numerous sections throughout the criminal code.[1] If contrary to that explanation, we assume that the Section does

---

1. For example, checking hurriedly through Sections 201 to 1001 of Title 18, that is true as to the following sections: 201, 204, 206, 217, 242, 287, 288, 289, 331, 443, 474, 478, 481, 482, 485, 486, 487, 488, 489, 490, 491, 493, 494, 495, 498, 500, 501,

not now cover a person who "causes to be transported", then a defendant would go free from punishment under this section who carried out his fraudulent plans by the use of the mails or of an innocent common carrier. It seems clear to us that no such radical change in the statute was intended by the revision.

Section 2 of Title 18 now reads as follows:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Subsection (b) was added in 1948 and amended in 1951.

The reviser's note to Section 2 calls attention that, "Section 2(b) is added to permit the deletion from many sections throughout the revision of such phrases as 'causes or procures' ". As heretofore noted (see footnote 1), an examination of many sections defining federal crimes corroborates this statement. It follows that Section 2(b) is not restricted to the subject of parties responsible for crimes, but that, in the present instance and in many others, it enters into the very definition of the crime itself. To hold otherwise would be to change the meaning of "many sections throughout the revision" contrary to the clearly expressed intention of the reviser.

The reviser's note further calls attention that Section 2(b) removes all doubt that one who "causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal", to accord with several decisions including United States v. Giles, 300 U.S. 41, 57 S.Ct. 340,

81 L.Ed. 493, reversing Giles v. United States, 5 Cir., 84 F.2d 943. In that respect, Section 2(b) does not enlarge criminal liability, but is merely a restatement of existing law. See United States v. Paglia, 2 Cir., 190 F.2d 445, 448; United States v. Chiarella, 2 Cir., 184 F.2d 903, 909, 910. Over a century and a quarter ago, Mr. Justice Story speaking for the Court said:

"It is the known and familiar principle of criminal jurisprudence, that he who commands, or procures a crime to be done, if it be done, is guilty of the crime, and the act is his act. This is so true, that even the agent may be innocent, when the procurer or principal may be convicted of guilt, as in the case of infants or idiots, employed to administer poison." United States v. Gooding, 12 Wheat 460, 25 U.S. 460, 469, 6 L.Ed. 693.

See also 14 Am.Jur., Crim.Law, § 75, Note 18, Sec. 63, Note 17; 22 C.J.S.Criminal Law, § 84(b).[2]

The judgment was right and it is
Affirmed.

HUTCHESON, Chief Judge (concurring in part and dissenting in part).

I concur in the affirmance of the judgment and sentence as to both defendants on count one, the mail fraud count of the indictment, and as to Pereira on count ten, the transportation count.

I dissent from the affirmance of the judgment as to Brading on count ten because proof that he either transported or caused to be transported the check in question is, in my opinion wholly lacking.

Finally, I dissent as to both defendants from the conviction and sentence on count eleven, the conspiracy count. I am in no doubt that as a general rule a conspiracy count and a substantive count cannot be said to charge the same offense so that one excludes the other. I am equally in

506, 508, 509, 549, 597, 832, 833, 834, 835, 871, 876, 877, 961, 962, 1001. It is true doubtless as to many other sections in Title 18 between Sections 1001 and the concluding Section 5037.

**2.** The word "principal" in crime is derived from the common law, and the court may

look to history and to the common law for its meaning. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; Williams v. United States, 5 Cir., 179 F. 2d 644, 647, affirmed 341 U.S. 70, 71 S. Ct. 581, 95 L.Ed. 758; Key Numbered Federal Digest, Criminal Law, ⊛11.

838

no doubt, however, that where, as here, the indictment merely charges that the conspiracy was to commit the same offenses charged in the substantive counts, a conviction on two of those counts and a dismissal of all the others, followed by a conviction and cumulative sentence on the conspiracy count, is to run a good principle into the ground, and make double jeopardy of the conspiracy count and the sentence on it.

I dissent from the conviction on this count further on the ground fully discussed in United States v. Crimmins, 2 Cir., 123 F.2d 271, that it does not follow, because a jury might have found the defendants guilty of the substantive offense, that they were justified in finding them guilty of a conspiracy to commit it.

In this case, while it was not necessary to prove, under the substantive offenses, that the parties agreed in advance to use the mails and transport stolen securities, it was necessary in proving the conspiracy count to prove that they did so agree.

While, therefore, in this case, I think the evidence is sufficient as to both defendants to show a violation of substantive count one and the use of the mails in carrying out the scheme, I do not believe that the evidence is sufficient to show that the parties entered into a conspiracy, that is agreed to use the mails under the first count or transport securities under the tenth.

Rehearing denied.

HUTCHESON, Chief Judge, concurs in part and dissents in part.