**UNITED STATES v. KREUTER.**

**Cr. No. 56759.**

United States District Court,
W. D. Texas, El Paso Division.

March 5, 1954.

228

Charles F. Herring, U. S. Atty., Austin, Tex., Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for plaintiff.

Joseph A. Calamia, El Paso, Tex., for defendant.

THOMASON, District Judge.

This case was tried before me without a jury on February 24, 1954, at which time I announced a verdict of guilty on all counts. On the 5th day of March, 1954, subject was sentenced to five years on each of the first six counts, all sentences to run concurrently. The seventh count was at that time dismissed on motion of the United States Attorney, as the record conclusively shows that the defendant had been arrested before the mails were used as alleged in said count.

The indictment in this case is in seven counts, each of which purports to charge a violation of the mail fraud statute, to wit, Section 1341, Title 18, United States Code. Some of the counts are based on mailing of letters in El Paso, Texas, and others are based on receiving of letters in El Paso, as will more specifically appear. The first count of the indictment is as follows:

"The Grand Jury Charges:

"1. That commencing on or about the 28th day of October, 1953, and continuing thereafter until on or about the 28th day of November, 1953, Gottfried William Kreuter devised and intended to devise a scheme and artifice to defraud persons who would be willing to accept and cash his worthless instruments in writing (checks) and to obtain money and property by means of the following false and fraudulent pretenses, representations, and promises, well knowing at the time that same would be false when made: Said scheme being to open

an account in a certain bank by depositing a check purporting to be bona fide, but in fact worthless, on another bank and thereby obtain from the original bank a receipt showing said deposit; which said receipt would later be used in inducing prospective victims to cash his worthless checks. Before this said scheme and fraud was discovered, it was a further part of his scheme to move on to another city or place and there to perpetrate a similar scheme, fraud, and situation. It was a further part of said scheme to approach some prospective victim, usually a Sears and Roebuck Store, and by the use of the deposit receipt received from the initial bank to open a charge account and to pass one or more worthless checks against said fictitious deposit. In this connection, a part of the scheme was to claim that he was working for a reputable local institution and to give a false and fictitious address and telephone number, usually choosing an address occupied by a person with a name the same as, or similar to, his. A further part of the scheme was to use the evidence of this charge account at other places to persuade those victims to cash more of his worthless checks.

"2. On or about October 28, 1953, in El Paso County, Texas, within the El Paso Division of the Western District of Texas, and in the jurisdiction of this Court, Gottfried William Kreuter, for the purpose of executing the aforesaid scheme and artifice and attempting so to do, caused to be placed in an authorized depository for mail matter a letter containing a check, payable to G. W. Kreuter, in the amount of $1,500.00, addressed to the First National Bank of Denver, Denver, Colorado, to be sent and delivered by the Post Office Establishment of the United States."

The fourth count is identical with the first, except for the time of mailing and the contents of the letter. The mailing charge of the second count is as follows:

"2. On or about November 2, 1953, in El Paso County, Texas, within the El Paso Division of the Western District of Texas, and in the jurisdiction of this Court, Gottfried William Kreuter, for the purpose of executing the aforesaid scheme and artifice and attempting so to do, caused to be delivered by mail, according to the direction thereon, a letter addressed to the El Paso National Bank, El Paso, Texas."

The third, fifth and sixth counts are identical with the second count, except that some of these counts describe the contents of the letter. In my opinion, each of the letters had to do with the scheme to defraud and, as I understand it, from motions filed and argument of counsel, the sole, or at least main defense, is that the evidence shows a series of schemes to defraud, and that each had reached its fruition before the mails were used for that respective scheme. It is therefore contended that the mails were not employed in furtherance of the respective schemes to defraud. In my opinion, however, the evidence clearly shows a continuing scheme as alleged in the indictment, and I so find. This is a question of fact for my determination. United States v. Kuiken, D.C., 101 F.Supp. 929, which opinion by this Court was, in effect, adopted by the Fifth Circuit Court of Appeals, 196 F.2d 223, certiorari denied 344 U.S. 867–910, 73 S.Ct. 109, 97 L.Ed. 657.

Defendant did not testify, nor did he offer any evidence. The Government's evidence, in brief, was as follows:

On October 28, 1953, defendant opened an account in the El Paso National Bank, El Paso, Texas, by depositing a check in the amount of $1,500, drawn on the First National Bank of Denver, Denver, Colorado. Defendant gave as his employer, R. E. McKee Con-

struction Company of El Paso, Texas, which is a local construction company with a nationwide scope and reputation. He also gave a local address which was listed in the telephone book under a name very similar to his. This same, or very similar, information was given at the opening of each of the other bank accounts, as will later appear, and was shown to be entirely false on each occasion. The $1,500 check mentioned above was mailed by the El Paso bank to the Denver bank on the same day that it was deposited, which is the mailing charge of count one. Payment of said check was refused, and the check was returned through the United States Mails by the Denver bank to the El Paso bank on November 2nd marked "Account Closed". This is the letter described in the mailing charge of the second count. On the date of the above deposit, October 28th, and the day following, October 29th, several checks drawn against this account were cashed by the defendant in El Paso, all of which, of course, were worthless, notably among which were some at the Sears, Roebuck and Company local store. On October 28th, defendant selected some $348.33 worth of furniture at the Sears, Roebuck Store and made a cash deposit of $100 with one of these worthless checks, charging the balance, which amounted to $248.33, plus carrying charges, etc. Before leaving the store, he cashed two other checks on this fictitious account in the amounts of $60 and $30 respectively. On October 31, he appeared at the Sears, Roebuck Store in Albuquerque, New Mexico, exhibited his El Paso charge account, and purportedly paid same with a check in the amount of $248.33, drawn on the above fictitious and spurious account at the El Paso National Bank. The Sears Store in Albuquerque sent, through the United States Mails, a letter to the El Paso Store giving notice of this payment; which said letter was received by the El Paso Store on November 3rd, which accounts for the mailing charge of the fifth count of the indictment.

On October 31, 1953, defendant deposited at the Albuquerque National Bank a check in the amount of $500, drawn on the El Paso National Bank, which said check was sent by mail to the State National Bank, El Paso, Texas, for collection and was received by said bank on November 3rd. This accounts for the mailing charge of the third count of the indictment.

On November 4th, the State National Bank of El Paso, Texas, placed in the mails this $500 check, after it had been dishonored by the El Paso National Bank. This accounts for the mailing charge of the fourth count. The indictment says that this letter contained a "check payable to G. W. Kreuter, in the amount of $500.00", whereas the evidence shows that said check was payable to the "Albuquerque National Bank". I find that this variance is immaterial, as the allegation as to the contents of the letter was surplusage. Form 3 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

On November 3, 1953, defendant opened an account with Texas Bank and Trust Company, Dallas, Texas, by depositing a $1,500 check drawn on the El Paso National Bank. On the strength of this deposit he cashed several checks in Dallas. On November 4th defendant appeared at the Sears, Roebuck Store in Dallas, opened a charge account, and gave false information as to his identity, employment, etc., almost identical with the procedure used at the Sears Stores in El Paso and Albuquerque, as heretofore described. He there attempted to cash a check but his request was refused. The Dallas bank sent by mail the check he had deposited, drawn on the El Paso National Bank, and the letter containing said check was received by the Federal Reserve Bank in El Paso on November 3rd, which accounts for the mailing charge of the sixth count of the indictment.

The physical facts show, as above described, that the mails were first employed on October 28th, when the El

Paso bank mailed to the Denver bank the check as alleged in the first count of the indictment. Thereafter, on that day and the day following, defendant cashed worthless checks over El Paso. Therefore, in my opinion, the physical facts show that the mails were used before the fruits of the scheme were obtained, so far as count one is concerned. The fact that he used his charge account of the El Paso Sears Store in Albuquerque to introduce himself and cash other worthless checks convinces me above any shadow of a doubt that the same and original scheme to defraud continued through this period of time, and made the other uses of the mails in furtherance of the scheme. I am also thoroughly convinced and find that since he employed almost the identical scheme in Dallas to open a worthless account at the bank and to open a fictitious charge account at Sears, Roebuck Store, and to cash and attempt to cash his worthless checks in Dallas, that his scheme continued through that period of time and accounts for the remaining mailing counts in the indictment.

Subject was arrested in Houston, Texas, on November 7, 1953, after opening a similar fictitious account there and a similar fictitious charge account at Sears, Roebuck. Each of the checks deposited in the banks were taken for collection.

 I find, as above stated, that his entire scheme to defraud was a continuing one and that each allegation of the use of the mails, as alleged in the indictment, was proven and was a part of his scheme to defraud. I am also of the opinion and find that each material allegation of the indictment is thoroughly established by the evidence. Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 151, 89 L.Ed. 88, is distinguishable from this case on the facts, and even the majority opinion is not inconsistent with my holding in this case. The opinion says:

"The case is to be distinguished from those where the mails are used prior to, and as one step toward, the receipt · of the fruits of the

fraud, such as United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836."

Four of the Judges of the Supreme Court, in the dissenting opinion say:

"I hardly think we would set this conviction aside if the collecting bank instead of cashing the checks took them for collection only and refused to pay the defendants until the checks had been honored by the drawee."

This, in my opinion, is the instant case exactly, so I take it that both the majority and minority opinions of the Kann case support this conviction. I am also of the opinion that United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 338, 91 L.Ed. 359, sustains the instant holding. Among other things the opinion says:

"Drawing the check upon an out-of-state bank, knowing it must be sent there for presentation, is an obviously facile way to delay and often to defeat apprehension, conviction and restoration of the ill-gotten gain."

That, in my opinion, is the situation in the instant case exactly.

The Kuiken case, supra, is on all fours with this case, and is perfect authority for the holding of this case in its entirety. However, as above mentioned, none of the above authorities need be resorted to to justify conviction under the first count of the indictment because, as above shown, the physical facts show that the deposit was made and the mails used on October 28th, and that *thereafter* on that day and the day following, the checks were given over El Paso and the fruits of his crime obtained. This certainly would justify the conviction under the first count, and in the Sheridan case, supra, it is said:

"Sheridan was sentenced to five years' imprisonment on each count, the sentences to run concurrently. Hence, if the conviction on any is valid, it is unnecessary to consider the convictions on the other two."